UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 16 CR 776 (VEC)

JOSEPH PERCOCO, ALAIN KALOYEROS, PETER GALBRAITH KELLY, JR., STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI, MICHAEL LAIPPLE, KEVIN SCHULER,

Defendants. ARRAIGNMENT/CONFERENCE

------------------------------x

New York, N.Y.
December 1, 2016
10:00 a.m.

Before:

HON. VALERIE E. CAPRONI,

District Judge

APPEARANCES

PREET BHARARA,
United States Attorney for the
Southern District of New York
ROBERT L. BOONE
JANIS ECHENBERG
MATTHEW D. PODOLSKY
DAVID ZHOU
Assistant United States Attorneys

BARRY A. BOHRER
MICHAEL L. YAEGER
Attorneys for Defendant Percoco

APPEARANCES (continued)

MICHAEL C. MILLER
JEFFREY A. NOVACK
Attorneys for Defendant Kaloyeros

DANIEL M. GITNER
JUN XIANG
Attorneys for Defendant Kelly

SCOTT W. ISEMAN
Attorney for Defendant Aiello

MILTON WILLIAMS
Attorney for Defendant Gerardi

JESSICA A. MASELLA
DANIEL C. OLIVERIO
TIMOTHY W. HOOVER
Attorneys for Defendant Ciminelli

HERBERT L. GREENMAN
Attorney for Defendant Laipple

JAMES W. GRABLE, JR.
Attorney for Defendant Schuler

(Case called)

THE DEPUTY CLERK: All counsel, please identify yourselves for the record.

MS. ECHENBERG: Good morning, your Honor.

Janis Echenberg for the government.

With me at counsel table are my colleagues Robert Boone, David Zhou, and Matthew Podolsky.

THE COURT: Good morning.

MR. BOHRER: Good morning, your Honor.

For Mr. Percoco, I am Barry Bohrer.

In the well with me is my colleague Michael Yaeger.

THE COURT: Good morning.

Could you identify your client.

MR. BOHRER: Mr. Percoco is about to stand right now.

THE COURT: Thank you.

MR. GITNER: Good morning, your Honor.

Dan Gitner and my colleague Jun Xiang behind me, Lankler, Siffert & Wohl.

My client is Peter Kelly, who is in the back of the room.

THE COURT: Okay. I actually heard -- I heard nothing and understood less.

MR. GITNER: Sorry, Judge.

THE COURT: Much better.

MR. GITNER: Dan Gitner, Lankler, Siffert & Wohl. My

colleague is Jun Xiang, he's behind me. My client is Peter Kelly; he's standing in the back of the courtroom.

THE COURT: Okay.

MR. GITNER: Thank you, Judge.

THE COURT: Thank you.

MR. WILLIAMS: Your Honor, Milton Williams, Vladeck, Raskin & Clark, for Joe Gerardi, who's right here.

THE COURT: I'm sorry, tell me again your name.

MR. WILLIAMS: It's Milton Williams.

THE COURT: Mr. Williams, have you filed a notice of appearance?

MR. WILLIAMS: I have not. I will file one as soon as this appearance is over.

THE COURT: Thank you.

Your client is Mr. Gerardi?

MR. WILLIAMS: That's right. He's right here, your Honor.

THE COURT: Thank you.

MR. OLIVERIO: Good morning, your Honor.

Daniel C. Oliverio for Louis Ciminelli, who is present today.

I'm here with Timothy Hoover and Jessica Masella.

THE COURT: Where is Mr. Hoover and Ms. Masella.

MR. HOOVER: Good morning, Judge.

MS. MASELLA: Good morning.

THE COURT: Good morning.

MR. GREENMAN: Good morning, your Honor.

Herbert Greenman, Judge, on behalf of Michael Laipple, who's standing right now, your Honor.

THE COURT: Thank you. Good morning.

MR. GRABLE: Good morning, your Honor.

James Grable appearing with and for Kevin Schuler, who's now standing.

THE COURT: Thank you.

MR. MILLER: Good morning, your Honor.

Mike Miller for the law firm of Steptoe & Johnson.

Also with me from my firm is Jeff Novack. And we represent Alain Kaloyeros, who is standing right now.

THE COURT: Could you sit down so I can -- thank you.

MR. ISEMAN: Good morning, your Honor.

Scott Iseman from O'Connell & Aronowitz. I represent Steve Aiello, who's standing right now, your Honor.

THE COURT: Okay. Thank you.

Okay. Let me just say to the press who's here I allowed the in-house press to bring your phones. You may not text, tweet, or anything else from the courtroom or it will go back to being an Amish courtroom for you, okay? Thank you.

All right. Ms. Echenberg, can you tell me a little bit about the case and particularly what type of discovery is

there going to be.

MS. ECHENBERG: Yes, your Honor.

As we've just seen, this is an eight-defendant case that involves overlapping schemes involving bribery, corruption, and fraud in New York State. I can walk through the types of discovery for you.

There were a number of email and physical search warrants in this case, and so there will be a number of emails that will be produced as a result of those search warrants and also physical items, computers, phones, and other electronic media which will be part of the discovery.

There are also voluminous bank and phone records and other relevant company and state agency documents that will be produced. Some of the defendants during the government's investigation made statements to the government and so that will be part of the discovery as well.

The discovery is quite voluminous. There will be over two million pages of documents that will be produced that fall into the categories that I have discussed as well as approximately two terabytes of data from the various electronic media that were seized during the investigation.

THE COURT: Okay. Well, that's extensive.

How long do you think it's going to take the government to actually produce all of this material?

MS. ECHENBERG: So we have begun to get that process

in the works. We have about 500,000 pages worth of discovery that should be ready to be produced imminently. We've spoken to defense counsel before the conference and we are going to be using an outside vendor.

So what we need to work out first is a protective order, given the sensitive nature of some of the discovery. We've provided a proposed protective order to counsel; they are reviewing it. Indications from this morning is I think we will have agreement on that order, a proposed order soon, and we will give that to your Honor.

Once that order is in place, I believe we will be prepared to make at least that first tranche of discovery available through the vendor and then we will continue to work on a rolling basis. I think everything that I've described should be available to defense within 45 days. We will certainly aim to make it faster, but just to be on the safe side, given the logistics of getting it from its location and making sure it's searchable and it gets to the vendor and out to the defendants, we want to put a little extra time, but we think 45 days should be more than sufficient.

THE COURT: Okay. Thank you.

My past experience has been that there's frequently disconnects between what the government thinks is searchable and thinks is manageable for the defense and what the defense thinks is searchable and manageable for the defense.

So given all of that, this really is a message for the defense: Try to work with the government to fix any of those problems. But if they can't be fixed, I want to hear about them sooner rather than later. I don't want to see you at the next status conference and people tell me, Oh, we've had problems for three months. If there are problems with the discovery, I want to hear about it as quickly as possible after you reach an impasse with the government in trying to work it out so that I can facilitate working it out so that you have all the material which you need in order to get prepped for this trial.

So I guess given what you've heard from the government and the conversations that you no doubt have had with the prosecutors, what does the defense think in terms of when this case is going to be able to go to trial and when you're going to be able to make motions?

Mr. Bohrer, I'm looking at you, so I'm going to ask you to talk. You're so shy, you never want to take the lead.

MR. BOHRER: I appreciate that, your Honor.

THE COURT: But I appreciate it.

MR. BOHRER: The short answer, in light of what we've heard for the first time this morning in terms of the volume, is I have no idea.

What I was going to suggest to your Honor before we get to your Honor's question is that we see where we are in

discovery. Your Honor mentioned the next status conference. I would think the next status conference, to be presumptuous, would be devoted to the issue of where we are in discovery and how we are making our way through it and what insight it gives us in terms of potential motions and thereafter.

Other than that, it's like blind man's bluff, we have no idea. When you talk about two terabytes of data, it's like a library worth of data.

THE COURT: Several.

MR. BOHRER: Or several. I live upstate; it's a small library.

Just the mechanics of making our way through it with this vendor and the issues your Honor has referred to are unknowns to us and so it would be a wild guess for me to even address the issue your Honor has raised.

THE COURT: Fair enough.

MR. BOHRER: I don't know if that satisfies the court, but it seems to me a logical approach, which is in X months, I would think, we're back before your Honor to report on the relative progress we've made in terms of discovery and, depending on where we are, we then have the discussion that your Honor seeks to have now.

THE COURT: Okay.

Does anybody else want to be heard or is Mr. Bohrer speaking all of your minds?

MR. WILLIAMS: Mr. Bohrer is speaking my mind, your Honor.

THE COURT: I'm assuming if there's no dissent, that's what everybody wants to do.

Okay. My natural inclination would be to try to set a schedule now and at least set a trial date now so that everybody knows what you're working against. I take your point that I'm not sure that's the right way to go here; that I think that might cause frustration on everybody's part.

So why don't we do this: The government says that they can get all of their discovery done in 45 days.

MS. ECHENBERG: Your Honor, I just want to clarify one point so that I'm not misleading the Court.

The 45 days refers to everything we have on hand right now, which is the discovery right now. This is an ongoing investigation, so there is the possibility that there will be additional items. As we receive them, obviously we will turn them over.

THE COURT: Of course.

If you're talking two terabytes of data though, presumably in 45 days the vast majority of what is ultimately going to be discovery in the case will have been turned over.

MS. ECHENBERG: That's correct.

THE COURT: That's my hope.

Okay. So why don't we set a status conference in

three months. That gives you another 45 days after all of this has come in; it should give you a much better sense of what you've got, what your motions are. My goal is going to be to set a trial date at that point. The reason is while I don't have any reason to believe I'm going to have a trial of eight people, getting this many schedules locked down is going to take -- I realize we are talking a trial date a ways off, to get to everybody's schedule being clear. So if I can set a date, you can hold that time.

Based on what we've got right now, how long do you think this trial is going to be?

MS. ECHENBERG: Again, as your Honor just noted, we don't know how many defendants will ultimately go to trial; but, again, to be on the safe side, I think a trial would be approximately four to six weeks.

THE COURT: All right.

So three months from now, Mr. Brantley, is when?

THE DEPUTY CLERK: March 1st.

THE COURT: Okay. Let's say March 1st at 2 o'clock.

THE DEPUTY CLERK: That's available.

MS. ECHENBERG: That's fine with the government.

THE COURT: In this courtroom. Unless we are way skinnied down in terms of number of defendants by then.

So March 1st we'll have a status conference. At that point everyone should come prepared to discuss motion schedules

and a trial schedule.

MR. OLIVERIO: Your Honor, Dan Oliverio for Mr. Ciminelli.

Clients present or can we waive their presence?

THE COURT: I think the clients should be present.

MR. OLIVERIO: Thank you, your Honor.

THE COURT: Okay. Anything else?

Okay. Let me just verify, Mr. Aiello and Mr. Gerardi are now represented by different people; correct?

MR. WILLIAMS: That is correct, your Honor.

MR. ISEMAN: That's correct, your Honor.

THE COURT: So that gets rid of one of my needs.

I think that's everything that I've got.

Anything further from the government?

Oh, yes, you want to exclude time.

MS. ECHENBERG: We do. We also need to arraign the defendants on the indictment.

THE COURT: Oh, thank you for reminding me.

All right. Gentlemen, all of the defendants, I'm going to need to know two things from you, whether you -- three things: Whether you've read the indictment, whether you've discussed it with your attorney, and what your plea is.

So Mr. Percoco.

MR. BOHRER: That's Percoco, your Honor.

Sir.

THE COURT: Have you read the indictment?

DEFENDANT PERCOCO: Yes.

THE COURT: Have you discussed it with your attorney?

THE DEFENDANT:

DEFENDANT PERCOCO: Yes.

THE COURT: How do you plead?

DEFENDANT PERCOCO: Not guilty.

THE COURT: Okay.

Mr. Kaloyeros. Did I pronounce that correct?

DEFENDANT KALOYEROS: Yes.

THE COURT: Okay.

Have you read the indictment?

DEFENDANT KALOYEROS: Yes.

THE COURT: Have you discussed it with your attorney?

DEFENDANT KALOYEROS: Yes.

THE COURT: How do you plead?

DEFENDANT KALOYEROS: Not guilty.

THE COURT: Thank you.

Mr. Kelly.

Have you read the indictment?

DEFENDANT KELLY: Yes.

THE COURT: Have you discussed it with your attorney?

DEFENDANT KELLY: Yes.

THE COURT: How do you plead?

DEFENDANT KELLY: Not guilty.

THE COURT: Mr. Aiello, have you read the indictment?

DEFENDANT AIELLO: Yes.

THE COURT: Have you discussed it with your attorney?

DEFENDANT AIELLO: Yes.

THE COURT: How do you plead?

DEFENDANT AIELLO: Not guilty.

THE COURT: Mr. Gerardi, have you read the indictment?

DEFENDANT GERARDI: Yes.

THE COURT: Have you discussed it with your attorney?

DEFENDANT GERARDI: Yes.

THE COURT: How do you plead?

DEFENDANT GERARDI: Not guilty.

THE COURT: Mr. Ciminelli. That's right, right? Ciminelli?

DEFENDANT CIMINELLI: Yes.

THE COURT: Have you read the indictment?

DEFENDANT CIMINELLI: Yes.

THE COURT: Have you discussed it with your attorney?

DEFENDANT CIMINELLI: Yes.

THE COURT: How do you plead?

DEFENDANT CIMINELLI: Not guilty.

THE COURT: Mr. Laipple?

DEFENDANT LAIPPLE: Correct.

THE COURT: Have you read the indictment?

DEFENDANT LAIPPLE: Yes.

THE COURT: Have you discussed it with your attorney?

DEFENDANT LAIPPLE: Yes.

THE COURT: How do you plead?

DEFENDANT LAIPPLE: Not guilty.

THE COURT: Mr. Schuler, have you read the indictment?

DEFENDANT SCHULER: Yes.

THE COURT: Have you discussed it with your attorney?

DEFENDANT SCHULER: Yes.

THE COURT: How do you plead?

DEFENDANT SCHULER: Not guilty.

THE COURT: Okay.

Is there any objection, based on the complexity of the case and the need to give the defense attorneys plenty of time to review what appears to be voluminous discovery, to exclude time under the speedy trial clock in the interest of justice between now and March 1?

MR. BOHRER: None here, your Honor.

UNIDENTIFIED SPEAKER: None here, Judge.

MR. GITNER: None here, your Honor.

MR. OLIVERIO: None here.

MR. ISEMAN: No objection, your Honor.

MR. GREENMAN: No objection, your Honor.

MR. GRABLE: No objection.

THE COURT: All right. Thank you. That seems like everybody.

Okay. Thank you, all. I will see you again in March.

MS. ECHENBERG: Your Honor, I take it time is excluded until March 1st?

THE COURT: Yes, time is excluded until March 1.

MS. ECHENBERG: Thank you, your Honor.

* * *