UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA,

      -against-

JOSEPH PERCOCO,
     a/k/a "Herb,"
ALAIN KALOYEROS,
     a/k/a "Dr. K,"
PETER GALBRAITH KELLY, JR.,
     a/k/a "Braith,"
STEVEN AIELLO,
JOSEPH GERARDI,
LOUIS CIMINELLI,
MICHAEL LAIPPLE,
KEVIN SCHULER,

                         Defendants.

16-CR-776 (VEC)

———————————————————————

# DECLARATION OF TIMOTHY W. HOOVER IN SUPPORT OF THE BUFFALO DEFENDANTS' JOINT MOTION TO DISMISS

       TIMOTHY W. HOOVER, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

## Introduction

       1.      I am a member of Hodgson Russ LLP, counsel of record for Defendant Louis P. Ciminelli.  Daniel C. Oliverio and I are trial counsel for Mr. Ciminelli.

       2.      This declaration is made upon my personal knowledge and upon information I learned during my investigation of the charges set forth in the Indictment.

3.      My declaration is offered in support of the joint motion of Defendants Louis Ciminelli, Michael Laipple, and Kevin Schuler (the "Buffalo Defendants") for an order dismissing the Indictment against them for failure to sufficiently allege venue in the Southern District of New York, as well as in support of the Buffalo Defendants' joint motion to transfer the case and Counts One, Four, and Five against them to the United States District Court for the Western District of New York at Buffalo.

4.      Set forth below is a brief summary of the Indictment (Docket #49) as it relates to the Buffalo Defendants, and specifically the lack of any factual allegations related to venue in the Southern District of New York, as to Counts One, Four, and Five and as to the Buffalo Defendants.[1]

5.      The Buffalo Defendants intend to file reply papers in support of their joint motions.

6.      The Buffalo Defendants request oral argument on the motions at the earliest available date and time set by the Court.

---

[1]      Mr. Ciminelli has submitted the separate Declaration of Daniel C. Oliverio, and separate Sealed Declaration of Daniel C. Oliverio, in support of the Buffalo Defendants' joint motion to transfer venue.  Counsel for Mr. Laipple and counsel for Mr. Schuler have submitted separate declarations providing additional facts relating to the motion to transfer.  The Buffalo Defendants have also submitted a joint memorandum of law, and Mr. Schuler has submitted a separate memorandum of law, in support of the joint motions.

**Motion To Dismiss And The Lack Of Any Factual Allegation That The Alleged Criminal Conduct Relating To Counts One, Four, and Five Occurred In The Southern District Of New York**

The Complaint and the Indictment Generally

7.     Mr. Ciminelli is the beneficial owner of LPCiminelli Inc. ("LPCiminelli"), a Buffalo, New York-based construction management, general contracting, and design-build firm.  LPCiminelli has a long track record of overseeing and delivering high-quality, major construction work for its private and public clients, including many public-private partnerships.

8.     The Buffalo Defendants were originally charged in Counts Nine and Eleven of the lengthy 79-page Complaint (Docket #1), the majority of which does not relate to the Buffalo Defendants.

9.     They were then charged in Counts One (wire fraud conspiracy), Four (wire fraud), and Five (bribery) in the 35-page Indictment, whose allegations track the claims and charges in the Complaint.

10.     LPCiminelli has not been charged with any crime.

11.     The Indictment purports to charge what the government has called two different conspiracies.  In reality, the Indictment charges at least three different conspiracies.

12.     Counts One, Four, and Five claim that the Buffalo Defendants participated in what is called "The Buffalo Billion Fraud and Bribery Scheme."  The allegations against the Buffalo Defendants all relate to LPCiminelli's interaction with Fort Schuyler Management Corporation ("Fort Schuyler") in a Request for Proposal process for preferred developers in

- 3 -

Buffalo, New York (the "Buffalo RFP"). Fort Schuyler is a private, not-for-profit 501(c)(3)

corporation, located in Albany, New York "that facilitates research and economic development

opportunities in support of New York's emerging nanotechnology and semiconductor clusters."

*See* About Fort Schuyler Management Corporation (FSMC), *http://www.ftsmc.org/* (last visited

Feb. 6, 2017). LPCiminelli eventually managed the construction, for Fort Schuyler, of a large

manufacturing plant at the Riverbend site in the City of Buffalo, New York, in the Western

District of New York.

13.     Fort Schuyler has two members, the SUNY Research Foundation and the

SUNY Poly Foundation, each an independently chartered 501(c)(3) corporation. Because of the

relationship between Fort Schuyler and the SUNY Poly Foundation, Fort Schuyler is affiliated

with what is presently known as the State University of New York Polytechnic Institute Colleges

of Nanoscale Science and Engineering ("SUNY Poly"), located in Albany, New York, and in

Utica, New York. The Buffalo RFP was issued by, managed by, and resulted in a selection of

preferred developers by, Fort Schuyler. Fort Schuyler manages and owns the Riverbend site and

facility that was built in Buffalo.

14.     Steven Aiello and Joseph Gerardi, executives with a wholly-separate

Syracuse development firm, are also charged in Count One (as well as in other counts unrelated

to the Buffalo Defendants). Those allegations, as noted below, relate to a separate Request for

Proposal and eventual contract or contracts for construction undertaken in Syracuse, New York

by Mr. Aiello and Mr. Gerardi's company, COR Development, in conjunction with Fort

Schuyler. Per the Indictment, the Buffalo Defendants, and LPCiminelli, had no role,

participation, or involvement in either pursuing, being awarded, or building anything in Syracuse

- 4 -

related to the charges in the Indictment, or to Fort Schuyler.  Put another way, what the government calls a single conspiracy under the aegis of the "The Buffalo Billion Fraud and Bribery Scheme" in Count One is actually two distinct alleged conspiracies.  Indeed, the Syracuse RFP and related projects were never part of the Buffalo Billion, as detailed further *infra* at ¶¶ 32-39.  So the Indictment, at a minimum, charges at least three conspiracies – not just two.

15.     Dr. Alain Kaloyeros is also charged in Count One and Count Four (as well as Count Two, which involves the Syracuse RFP process, and is unrelated to the Buffalo Defendants).  Dr. Kaloyeros was on the board of Fort Schuyler.  He was also the President of SUNY Poly.  Dr. Kaloyeros is charged in Count One for his supervisory involvement in both the Buffalo RFP, and the separate Syracuse RFP, both overseen by Fort Schuyler.  The only other Defendants with whom the Buffalo Defendants are alleged to have had any contact are Dr. Kaloyeros and the separately-charged Todd Howe.

16.     The Buffalo Defendants are not charged in any other count in the Indictment.  The Buffalo Defendants are not charged as part of the other alleged conspiracy – the "Percoco Bribery Scheme" – and are not alleged to have played any role in those charges, despite the government's claim that the two conspiracies overlap.  They do not overlap – either generally or as related to the Buffalo Defendants.  Rather, Mr. Aiello and Mr. Gerardi are charged in the separate "Percoco Bribery Scheme," as well as with making false statements, and Todd Howe has pleaded guilty to his claimed conduct in both alleged schemes.

<u>Counts Against the Buffalo Defendants</u>

17.     Count One accuses the Buffalo Defendants of participating in a wire fraud conspiracy to defraud Fort Schuyler in its award of taxpayer-funded development contracts by "representing to Fort Schuyler that the bidding process for those contracts was fair, open, and competitive, when in truth and in fact, KALOYEROS and Todd Howe used their official positions to secretly tailor the requests for proposals ("RFPs") for those contracts so that the companies that were owned, controlled, and managed by AIELLO, GERARDI, CIMINELLI, LAIPPLE, and SCHULER would be favored to win in the selection process for the contracts." Indictment ¶ 37.

18.     The involvement of the Buffalo Defendants in the alleged conspiracy charged in Count One relates only to the RFP for a Buffalo-preferred developer and the subsequently-awarded contracts.  The Buffalo Defendants had no involvement in the Syracuse RFP that involved COR Development (and Mr. Aiello and Mr. Gerardi), and for which Dr. Kaloyeros, Mr. Aiello, and Mr. Gerardi are charged in Count One.  This is confirmed by, among other things, the fact that the substantive wire fraud and bribery charges for the Syracuse RFP (Counts Two and Three) are charged separately from the wire fraud and bribery charges for the Buffalo RFP (Counts Four and Five).  The Buffalo Defendants are not charged in Counts Two and Three.

19.     Count Four charges the Buffalo Defendants, and Dr. Kaloyeros, with wire fraud, alleging that Fort Schuyler was defrauded in its own award of the Buffalo RFP by the Buffalo Defendants "representing to Fort Schuyler that the bidding process for those contracts was fair, open and competitive, when, in truth and in fact, and as CIMINELLI, LAIPPLE, and

SCHULER well knew, KALOYEROS and Todd Howe secretly used their official positions to tailor the RFP for the Buffalo Preferred Developer contract so that the Buffalo Developer [LPCiminelli] would be favored to win in the selection process for the contract." Indictment ¶ 43. Count Four contains no reference to any particular wire transmission. Indictment ¶¶ 42-43. It is not an honest services charge. *Id.*

20. Count Five charges the Buffalo Defendants only with bribing Todd Howe, Indictment ¶¶ 44-45, a non-government employee who was employed by a government relations firm that was an affiliate of a law firm the Buffalo Defendants' company (LPCiminelli) retained. Howe was supposedly an agent and representative of SUNY Poly. Indictment ¶ 45. But the Complaint suggests that payment of the law firm's fees – not any payment to Howe – was made to influence Howe, as an agent of SUNY Poly, in connection with what the Indictment calls "obtaining the Buffalo RFP." Complaint ¶ 72(a); Indictment ¶ 45. The law firm has not been charged.

21. The present motions relate to lack of venue and transfer of venue. Other legal deficiencies, contradictions, and factual inaccuracies in the Indictment will be subject to separate motion practice if necessary. However, the Indictment contains fundamental and glaring inaccuracies related to the Buffalo RFP process that are detailed below and in the Statement of Facts section of the Joint Memorandum of Law, as relevant background.

a. The Indictment's allegations that the process through which LPCiminelli responded to Fort Schuyler's Buffalo RFP and, through which, after multiple bids from various companies, it was selected as one of two preferred developers, was a "selection

process for the contract" or was a "bidding process for those contracts" is inaccurate.  Indictment ¶ 43.

b.      The RFP process was geared toward selection by Fort Schuyler of a preferred local developer, or preferred local developers, for Buffalo-area projects.  And, in fact, Fort Schuyler selected *two* companies – one being LPCiminelli – as preferred developers.

c.      The RFP process was not a bidding process.  It was not tied to a specific project.  Being selected did not guarantee award of anything, and any selection could be cancelled or terminated by Fort Schuyler.  *See, e.g.*, Brian Sharp and Jon Campbell, *State to bid photonics work, re-evaluate HQ*, Rochester Democrat & Chronicle, Oct. 21, 2016, *http://www.democratandchronicle.com/story/news/2016/10/20/next-step-photonics-should-bring-clarity/92456660/* (last visited Feb. 6, 2017) (using an RFP nearly identical to the Buffalo RFP, Fort Schuyler selected preferred local developers for potential Rochester projects, but those preferred developers never received any contracts as a result:  "When it comes to the 'preferred developer' firms, LeChase spokeswoman Jennifer Miglioratti said via email Friday that the firm had not spoken with state officials on the matter but that this was a designation with 'no guarantee of anything to come of it, and nothing did.'").

d.      Neither the RFP process, nor being selected a preferred local developer, resulted in the award of a contract.  It did not guarantee a contract would be awarded.  And it did not involve interaction with the Empire State Development Corporation.

e.      Only in the summer and fall of 2014, after arms' length and prolonged and heated negotiations, did LPCiminelli enter into contracts to build the Riverbend

facility in Buffalo.  And, even after that, LPCiminelli was not "awarded a State contract" – Fort Schuyler is not a state entity or part of state government – "[a]s a result of the criminal conduct alleged" in the Indictment.  Indictment ¶ 26.

        f.     Fort Schuyler, as a private entity pursuing a qualified local developer for local construction, was not soliciting requests for proposals or qualifications for public work.  Because Fort Schuyler is not a public entity, and because the potential work was not public work, the state bidding rules that might otherwise apply to construction work for the State of New York or its political subdivisions did not apply.  Nor did Fort Schuyler adopt any particular procedures, rules, or regulations regarding how it solicited qualifications or proposals or decided to partner with construction firms.  Fort Schuyler is not required to have a competitive bidding process *at all* to select developers or to negotiate contracts.  As noted, the RFP process was not a bidding process.  Finally, the Indictment is silent as to what rule or regulation governing Fort Schuyler, if any, the Buffalo Defendants purportedly violated, because none exists.

        g.     Count Five charges the Buffalo Defendants only with bribing Todd Howe.  Howe, who was not a government employee, worked for a government relations firm affiliated with a law firm that had been retained by LPCiminelli, and allegedly acted as an agent for SUNY Poly, supposedly in relation to the Fort Schuyler Buffalo RFP (in which the Buffalo Defendants are charged in Counts One and Four with criminal conduct relating not to SUNY Poly, but to the Buffalo RFP issued by Fort Schuyler).  But neither LPCiminelli nor the Buffalo Defendants paid Howe anything:  they did not give him money, they did not give any entity controlled by him money, they did not give him loans, and they did not give him gratuities.

Rather, LPCiminelli engaged the Albany, New York law firm – Whiteman, Osterman & Hanna LLP – which did work for LPCiminelli, and which also, *via* its government relations affiliate (WOH Government Solutions LLC), did consulting work for LPCiminelli.  All LPCiminelli fees were paid to the law firm – not to Howe personally, and not to WOH Government Solutions LLC.  Nor did the Buffalo Defendants know that Howe was a consultant for SUNY Poly (contrary to the allegations in the Complaint), or that he was a previously-convicted felon.

22.     Absent from the Indictment is the result of this alleged fraudulent scheme. Simply put, the contract for design-build services that LPCiminelli ultimately executed for the Riverbend project resulted in the highest quality building being constructed on an expedited schedule, on time, on budget, and on target, with significant preparation work and construction occurring during the extremely difficult 2014-2015 Buffalo winter, all with no monetary loss of any kind to Fort Schuyler, the State of New York, or to its taxpayers.

a.      The photo below is a picture of the Riverbend site on March 15, 2015, after site work and construction work was well underway:



b.      The photo below, taken January 30, 2015, reflects the difficult winter 2014-2015 conditions that LPCiminelli, it employees, and the contractors faced and successfully worked through:



c.      The photo below shows the progress of the construction on June 22, 2015:



d.      Below is a photo of the building and the construction progress, taken on November 9, 2015:



e.      Below is a photo of the completed Riverbend facility and factory for SolarCity, from October 2016 (from a greater elevation than the prior photos), looking west toward the facility and downtown Buffalo and Canada:



f.      The following interior photo gives one perspective of the size of

the project, and of the interior of the building:



<u>Neither the Complaint Nor the Indictment Contain Any Factual Allegations of Venue in the
Southern District of New York as to Mr. Ciminelli, Mr. Laipple, or Mr. Schuler</u>

23.     Both the Complaint and the Indictment are wholly silent with respect to

any specific acts, overt acts, facts, criminal conduct, or non-criminal conduct by the Buffalo

Defendants having occurred in the Southern District of New York.

24.     The only attempt to plead venue is the stock and legally conclusory

language that the crimes occurred "in the Southern District of New York and elsewhere . . . ."

Indictment ¶¶ 36, 43, 45.

25.     Other publicly filed documents relating to this case also provide no basis for venue in the Southern District of New York.  The transcript of the plea of Todd Howe before Judge Berman on September 20, 2016 contains a passage where counsel for the government indicates that "we would have evidence that would include witness statements and documents showing that the entity charged with overseeing and doling out these government contracts had interactions with a state agency in New York City that was charged with essentially helping pay for those projects."  Transcript of plea hearing of Todd Howe, at 39-40, *United States v. Howe*, No. 16-CR-632 (RMB) (S.D.N.Y.) (attached as Exhibit A).  Setting aside the mistaken reference to "government contracts" – the RFP process did not award a single contract – the prosecutor apparently referred to SUNY Poly and/or Fort Schuyler, and the Empire State Development Corporation.  But neither SUNY Poly, nor Fort Schuyler, nor Empire State Development Corporation are charged with any offense, and they are not co-conspirators.  And no allegation is made that there were any "interactions" between Empire State Development and Howe or Dr. Kaloyeros – let alone the Buffalo Defendants.  Empire State Development played no role in Fort Schuyler's selection of preferred developers.

26.     Moreover, there is no dispute that Fort Schuyler is a not-for-profit, private entity, not part of New York State government.  That is confirmed, among other ways, by Section 8(g) of the original May/June 2014 Grant Disbursement Agreement between Empire State Development and Fort Schuyler, for the benefit of the then-existing proposed tenants for the Riverbend facility (attached as Exhibit B, without amendment), which provided that "Grantee [Fort Schuyler] covenants that it will neither hold itself out as, nor claim to be an officer, employee, agent or representative of ESD" for purposes of the initial grant to Fort Schuyler for Riverbend design and planning costs.

- 17 -

27.     Later in the plea proceeding, Howe read his scripted allocution.  He claimed that, regarding what is charged here as the "Buffalo Billion Fraud and Bribery Scheme": "[d]uring the conspiracy, I attended several meetings here in New York City that related to the clients that are referenced above."  Ex. A, at 46.  Notably, Howe's claim contained no particular details and, in fact, did not even make clear that the meetings related to the conspiracy or any alleged criminal act or charges involving the Buffalo Defendants.  Rather, Howe attended meetings in New York City, related to his clients, *during* the conspiracy.  This portion of his allocution is in sharp contrast with his allocution as to venue on the "Percoco Bribery Scheme," where, he claims:  "[a]s part of the conspiracy, I met with CC1 and other members of the conspiracy on several occasions between 2010 and 2016 here in New York City.  In engineering the foregoing acts, I used the mails, email and other instruments of interstate commerce, to make arrangements for the payments to CC1 and in certain cases did make the payments to CC1 to his wife or on his behalf."  Ex. A, at 43.

28.     LPCiminelli's efforts to respond to the Buffalo RFP, interact with Fort Schuyler, interact with Dr. Kaloyeros, interact with Howe and, ultimately, be selected as a preferred developer, all occurred almost exclusively in Buffalo, in the Western District of New York.

29.     Dr. Kaloyeros resided and worked in and near Albany, in the Northern District of New York.  LPCiminelli's response to the Buffalo RFP was sent to Albany.

30.     Howe lived and worked in Washington, District of Columbia, and apparently was frequently in Albany, New York.

31.     Neither LPCiminelli, nor the Buffalo Defendants, sent anything to the Southern District of New York, met with Dr. Kaloyeros or Howe there, or took any actions in the Southern District of New York with regard to the successful completion of the manufacturing facility in Buffalo.  Nor did Dr. Kaloyeros or Howe take any actions in the Southern District of New York with regard to Counts One, Four, and Five.

**Additional Background:  The Syracuse RFP And Syracuse Projects Were Never Part of The Buffalo Billion**

32.     As referenced above, the Indictment uses the moniker "Buffalo Billion Fraud and Bribery Scheme" to describe Count One and related counts, attempting to sweep Defendants Aiello and Gerardi into an alleged conspiracy with the Buffalo Defendants.  The attempt conflicts with what actually occurred and is both factually and legally flawed.  Both to provide proper background, and to provide information relevant to the Court's analysis of the Buffalo Defendants' motion to transfer, the following comments on the government's attempt to fashion two alleged conspiracies into one are necessary.

33.     The contracts Fort Schuyler awarded to the Syracuse Developer were not a part of the Buffalo Billion initiative.  The contract LPCiminelli ultimately received was part of the Buffalo Billion initiative.

34.     The two RFP processes and the awards of contracts do not fall together under the Buffalo Billion umbrella; rather, they are separate and distinct.  This distinction is evident in the wording – and lack of wording – of the Indictment and Complaint, as well as in publicly available material and press releases concerning the Buffalo Billion investment initiative and other region-specific development programs.

- 19 -

35.     The Indictment's lack of specificity regarding the Buffalo Billion initiatives confirms that the Syracuse Developer's RFP process and the Buffalo Developer's RFP process were separate and distinct.  In fact, "Buffalo Billion" is used only once in the Indictment: in the title "The Buffalo Billion Fraud and Bribery Scheme."  Indictment at 9.  Indeed, no allegations in the Indictment support the government's claim that the RFP processes and the awarding of contracts to the two developers fell under the Buffalo Billion initiative.  The Indictment simply sets out – in generic language – that both the Syracuse Developer and the Buffalo Developer were awarded lucrative state contracts, without any reference to the Buffalo Billion.  *See* Indictment ¶¶ 22-26.

36.     The Complaint also confirms that the Syracuse Developer's and Buffalo Developer's RFP processes and award of contracts were separate and not both Buffalo Billion-related.  Rather than describe the Buffalo and Syracuse projects together, the Complaint repeatedly refers to the Buffalo Billion and other programs.  The Complaint defines the "Buffalo Billion Fraud and Bribery Scheme" as involving "bribery, corruption, and fraud in the award of contracts under the Governor's 'Buffalo Billion' initiative *and similar programs*."  Complaint ¶ 21 (emphasis added).  Later, when describing the role of Fort Schuyler, the Complaint states that private companies were selected "to partner with Fort Schuyler in CNSE-related development projects, including Buffalo Billion-related projects in Buffalo and *similar development projects in Syracuse*, among other places."  Complaint ¶ 25(c) (emphasis added).  The Buffalo Billion-related projects were specific to Buffalo; the development projects in Syracuse were part of other *similar* state programs.

37.     Publicly available material confirms the Buffalo RFP process and the Syracuse RFP process were separate.  First, the Buffalo-Niagara metropolitan area (the beneficiary of the Buffalo Billion initiative) is represented at the state level by the Western New York Regional Economic Development Council ("WNYREDC"), whereas the Central New York Regional Economic Development Council ("CNYREDC") represents the Syracuse metropolitan area and its surrounding counties.  *See* New York State Website for Regional Economic Development Councils, available at *http://regionalcouncils.ny.gov/* (last visited Feb. 6, 2017).  Moreover, the WNYREDC authored the Buffalo Billion Investment Development Plan, which states that the purpose of the initiative is to "chart the Buffalo Niagara region's unique path to a thriving economy that is based on a deep understanding of where we are today and where we can go."  *The Buffalo Billion Investment Development Plan* (dated Feb. 2013), at 5, available at *http://regionalcouncils.ny.gov/themes/nyopenrc/rc-files/westernny/Buffalo_Billion_Investment_Development_Plan_February_2013.pdf* (last visited Feb. 6, 2017); *see also Buffalo Billion Investment Development Plan Executive Summary*, available at *http://regionalcouncils.ny.gov/themes/nyopenrc/rc-files/westernny/Buffalo_Billion_Investment_Development_Plan_Executive_Summary_December_2012.pdf* (last visited Feb. 6, 2017).

38.     Further proof that the Syracuse metropolitan area projects referenced in the Indictment and Complaint were not part of the Buffalo Billion is found by reviewing New York State's Upstate Revitalization Initiative Competition Guidelines (the "URI Guidelines").  *See* *https://www.ny.gov/sites/ny.gov/files/atoms/files/2015UpstateRevitalizationInitiative_FINAL1.pdf* (last visited Feb. 6, 2017).  The URI Guidelines make clear that the Upstate Revitalization

Initiative ("URI") was inspired by the success of the Buffalo Billion initiative, *see* URI Guidelines at 2, and that funds under the URI are available only to certain regional economic development councils, including CNYREDC, but that WNYREDC is ineligible to receive URI funds because it was the "recipient of the Buffalo Billion."  URI Guidelines at 6.

39.    Finally, the Governor's press releases for the contracts eventually awarded clearly indicate that only the Riverbend project awarded to the Buffalo Developer was part of the Buffalo Billion initiative.  For instance, the Governor's press release announcing the Riverbend project states that it is "the largest investment in our Buffalo Billion initiative."  *See https://www.governor.ny.gov/news/governor-cuomo-announces-new-york-state-build-high-tech-manufacturing-complex-buffalo* (last visited Feb. 6, 2017).  By contrast, the Governor's press release announcing plans for the development of the Central New York Film Hub, which is one of the projects awarded to the Syracuse Developer alleged in the Indictment, makes no reference to the Buffalo Billion.  *See https://www.governor.ny.gov/news/governor-cuomo-announces-california-film-production-company-anchor-new-hub-emerging-nano* (last visited Feb. 6, 2017). And the Governor's October 2015 press release announcing the $90 million state investment for construction of a manufacturing plant in Syracuse makes no mention of the investment being a part of the Buffalo Billion.  *See https://www.governor.ny.gov/news/governor-cuomo-announces-new-soraa-led-manufacturing-facility-will-create-420-new-high-tech* (last visited Feb. 6, 2017).

## **Conclusion**

40.    The Indictment should be dismissed as against the Buffalo Defendants for its failure to sufficiently allege venue.

41.    If the Indictment is not dismissed, Counts One, Four, and Five against the Buffalo Defendants should be transferred to the United States District Court for the Western District of New York at Buffalo.

Dated:      Buffalo, New York
            February 6, 2017

                        **HODGSON RUSS** LLP
                        *Attorneys for Defendant Louis Ciminelli*

                        By:  s/Timothy W. Hoover_____
                              Daniel C. Oliverio
                              Timothy W. Hoover
                        The Guaranty Building
                        140 Pearl Street, Suite 100
                        Buffalo, New York 14202-4040
                        716.856.4000
                        *doliverio@hodgsonruss.com*
                        *thoover@hodgsonruss.com*