# EXHIBIT A

XG9KYHOW                    SEALED – DO NOT DOCKET                    1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4           v.                          08 CR 8000

 5   JOHN DOE,

 6                   Defendant.

 7   ------------------------------x

 8                                       New York, N.Y.
                                         September 20, 2016
 9                                       12:00 p.m.

10

     Before:
11
                          HON. RICHARD M. BERMAN,
12
                                         District Judge
13

14                              APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     ROBERT L. BOONE
17   JANIS ECHENBERG
          Assistant United States Attorney
18
     MORVILLO LLP
19        Attorneys for Defendant
     BY:  ROBERT MORVILLO
20        STUART PIERSON

21

22

23

24

25
```

# EXHIBIT A

1          THE COURT:  Nice to see you all.

2          So a couple of preliminary issues.  We, as you all

3    know, are here today for a plea allocution.  Let's first hear

4    from the government, if you will.

5          The government has made application that this be a

6    closed courtroom proceeding and that the documents in this case

7    be sealed, as they have been up until now.

8          So if you could for the record explain why this

9    unusual procedure.

10          MR. BOONE:  Certainly, your Honor.  As we laid forth

11    in papers we filed with your Honor, this case is a sensitive

12    case given the individuals involved.  It involves high-level

13    government officials including at least one official who was a

14    high-level member of the current government in New York cabinet

15    so to speak.  It also involves other state employees, some of

16    whom are still employed by the state.

17          It is a case that in some parts there have been

18    reports in the press about the case and about Defendant Howe in

19    particular.  It's obviously our goal to keep things that are

20    involving grand jury proceedings as secret as possible.

21          Given that there is already interest in the case, we

22    feel it's necessary to have a closed room and closed documents

23    related to the case so that we can continue our investigation

24    and our investigation won't be hindered or disrupted by the

25    fact that people are aware of certain aspects of it.

 1          THE COURT:  As you mentioned, there have been some

 2  news accounts already of the investigation.  I think I saw

 3  one -- I can't remember what periodical it was, but one that

 4  counterposed Mr. Howe and Governor Cuomo for example.  You may

 5  have seen that yourself.

 6          MR. BOONE:  Yes, your Honor.

 7          THE COURT:  Yet you still feel there's a need for

 8  secrecy, notwithstanding the matter has been discussed

 9  publicly?

10          MR. BOONE:  Yes, your Honor.  As we laid out in the

11  papers --

12          THE COURT:  You might want to refer to particular

13  papers that you're talking about by date.

14          MR. BOONE:  Yes, your Honor.  We filed an affidavit in

15  a proposed order requesting sealing of the courtroom.  We sent

16  it to your Honor's chambers yesterday I believe.

17          As we set out there, even though there have been

18  accounts as we've noted earlier, in our view, that makes it

19  even more important to keep the matters sealed and as secretive

20  as possible so that we can continue to conduct our

21  investigation without further disruption that results in the

22  media and others finding out about activities.

23          Having someone in the case -- in this instance, this

24  will be the first person in the case who pleads guilty to

25  crimes related to our investigation -- that fact in and of

1    itself would be, we believe, something that we would be very

2    interested in, and it would signal to targets and others that

3    the case has reached a much more serious stage.

4            THE COURT:  The article I was mentioning before is an

5    article by Fredric Dicker dated August 8, 2016, the caption of

6    which is that "Cuomo Crony Spills for Leniency Deal in

7    Corruption Probe."  So at least Mr. Dicker has some

8    understanding about this case.

9            How far along would you say you are roughly?  I don't

10   want the details of your investigation.

11           MR. BOONE:  Very close, your Honor.

12           THE COURT:  To concluding it?

13           MR. BOONE:  Yes, your Honor.

14           THE COURT:  Mr. Morvillo, do you feel the same?  That

15   there is a need for closing the courtroom?  It's an unusual

16   occurrence for us.

17           MR. MORVILLO:  Yes, your Honor.  If I might, on a

18   personal note, I've been asked to extend greetings from my

19   nephew and your clerk.

20           THE COURT:  The record should reflect that his nephew

21   was my former clerk.  I can't pick the year right now.  It was

22   probably three or four years ago.

23           MR. MORVILLO:  Two or three years ago.

24           Your Honor, I've been involved in a number of

25   high-visibility cases, but I can't recall one where we've been

1   hounded as much, both by the media and by other defense

2   lawyers.

3         The article that your Honor alludes to was inaccurate

4   at the time because the cooperation agreement was only signed

5   today.  I'm besieged by phone calls, people trying to

6   understand the nature and the status of the investigation.

7         I dare say I think that there has been an attempt by

8   some to smear Mr. Howe's reputation as a precursor to what

9   might be their defense strategy down the road.

10        So, for the protection of my client and his family, we

11  would appreciate it.  We also think that he has very sensitive

12  information held very closely by a number of very powerful

13  people in the state.  Therefore, I think the integrity of the

14  investigation is preserved if we can operate under the seal.

15  Thank you.

16        THE COURT:  So I've agreed to do it up until today,

17  and I've agreed to do it at this time as well.  It's always,

18  especially since there is already information out there -- I

19  certainly don't want to do it for a long period of time.  So I

20  would urge everybody to move things along.

21        It sounds like that is what the government is doing

22  with the defense.  But sooner is better than later where you

23  have a proceeding that is closed such as this one.

24        Number two, I will be doing it anyway, but I think it

25  would be a good time to swear in Mr. Howe in case there are

1    questions other than the formal questions.

2            If you could please stand and raise your right hand.

3            (Defendant sworn)

4            THE COURT:  Mr. Howe, you're under oath.  You are no

5    doubt aware that your answers to my questions must be truthful.

6    If you should fail to answer truthfully, you could be subject

7    to criminal penalties of perjury or making a false statement.

8            You understand that I'm sure; right?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  If you could clear up a little bit for me,

11   unless I misread it.  You lived in New York state up until what

12   point of time?

13           THE DEFENDANT:  In New York state until roughly 1995,

14   your Honor.

15           THE COURT:  You were a resident of New York until

16   then?

17           THE DEFENDANT:  Yes, I was.

18           THE COURT:  And then you moved to DC?

19           THE DEFENDANT:  Yes, I did, your Honor.

20           THE COURT:  Is that where you reside now?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Was there an interim period that you

23   resided in Maryland?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  So, between moving to DC, Maryland, and

1    now, that spans how many years?  Roughly.

2              THE DEFENDANT:  Roughly about 20 years or so.

3              THE COURT:  Thank you.  I'm going to have a lot more

4    questions for you, as you can imagine, in a minute.  You can be

5    seated for the moment.

6              This is a question that comes later in the allocution,

7    but I think I am going to start with the government, at least

8    on a summary basis -- there are many counts here.  There are

9    eight counts altogether.

10             Could you just run us through quickly, not in as much

11   detail as you will later on in the course of the allocution,

12   what those counts in lay language charge.

13             MR. BOONE:  Would you like me to go through the

14   elements?

15             THE COURT:  You don't need to go through all the

16   elements -- I'll ask you to do that later on -- just so that

17   there's an understanding of what they are.  You could, perhaps,

18   look at the plea agreement.  This is a cooperation agreement;

19   is that correct?

20             MR. BOONE:  That's correct.

21             THE COURT:  So that has the counts in pretty summary

22   form.  You might just expand a little bit on those.  Tell us

23   what Count One means, what Count Two means, etc.

24             MR. BOONE:  Certainly, your Honor.  Count One charges

25   the defendant with conspiring to commit honest services fraud.

XG9KYHOW                    SEALED - DO NOT DOCKET                    8

 1    If I can, your Honor, it might be easier for me to explain

 2    which conspiracy.

 3              THE COURT:  Okay.

 4              MR. BOONE:  It's probably easiest to think of this as

 5    two different conspiracies.  The first conspiracy relates to

 6    the first three counts.  So that's conspiring to commit honest

 7    services fraud, conspiracy to commit extortion under color of

 8    official right, and the substantive count of extortion under

 9    color of official right.

10              THE COURT:  That's Counts One, Two, and Three?

11              MR. BOONE:  Yes, your Honor.  That's Counts One, Two,

12    and Three.  Those counts relate to a scheme that defendant

13    participated in in which who was referred to in the indictment

14    as CC1, a former official in the state government, received

15    payments from companies and Todd Howe facilitated those

16    payments.  The purpose of those payments was to get official

17    action from CC1.

18              THE COURT:  On behalf of clients of Mr. Howe?

19              MR. BOONE:  Correct, your Honor.  On behalf of clients

20    of Mr. Howe.  Mr. Howe more or less acted as a conduit of those

21    payments.  To be clear, these schemes are overlapping in some

22    degree.

23              Moving to the second conspiracy, those are covered in

24    Count Four, which is a conspiracy to commit wire fraud;

25    Count Five, which is a substantive act of wire fraud, charge of

1  wire fraud, rather; and Count Six, which is a conspiracy to

2  commit bribery.

3           In that conspiracy, Mr. Howe in a sense wore two hats.

4  He acted as a consultant for a state organization, as is laid

5  out in the information, while at the same time acting as a

6  consultant for individual private companies.

7           In that conspiracy, Mr. Howe was helping those

8  companies who were his clients obtain contracts from the state.

9  As a consultant with a state entity, he had an opportunity to

10 influence the request for proposals and did so, as we allege in

11 the information, and did so in exchange for money from those

12 clients of his.

13          THE COURT:  And the state organization is an arm of

14 SUNY?  Is that right?

15          MR. BOONE:  That's right, your Honor.  State

16 University of New York.

17          THE COURT:  SUNY was in a position to award contracts

18 to clients of Mr. Howe, and Mr. Howe helped, unbeknownst to

19 SUNY, if I understand it correctly, frame the requests for

20 proposals so that Mr. Howe's clients would actually win those

21 awards.

22          MR. BOONE:  I just want to correct a little bit.

23          THE COURT:  Okay.

24          MR. BOONE:  Mr. Howe was working as a consultant for

25 an affiliate of SUNY that was charged with doling out these

1    contracts that were funded by taxpayers' money.

2            His salary came from the State University of New York

3    and their foundation, which sort of helped pay for this

4    affiliate institution that was charged with organizing these

5    development projects.

6            THE COURT:  And seven and eight, the last two counts.

7            MR. BOONE:  Count Seven relates to Howe's former

8    employer.  He used to work for a lobbying firm that was an arm

9    of a law firm.  During that time period, he embezzled money

10   from that firm.  That's what Count Seven is referencing.

11           Count Eight is referencing the fact that for several

12   years, Mr. Howe filed tax returns that were false.  They were

13   false, in part, because they did not include the money he

14   essentially was embezzling from his law firm, from the lobbying

15   firm that was affiliated with his law firm.

16           THE COURT:  As part of the plea agreement, I think I

17   noticed that prior to any sentence in this case, Mr. Howe has

18   an obligation to file correct tax returns that have not been

19   filed to date.  Is that right?

20           MR. BOONE:  That's correct, your Honor.

21           THE COURT:  Thank you.  Again, I'm going to call on

22   you a little bit later on to go over the counts, perhaps, in

23   more detail.  We'll see how far we get.

24           Let me also note that I have received back from

25   Mr. Morvillo and Mr. Howe what we call an advice of rights form

1    signed by each of you and dated today's date, September 20.

2    This form advises of certain rights that one gives up by

3    pleading guilty.

4         Mr. Morvillo, I'm sure you went over this form with

5    Mr. Howe before you each signed it.

6         MR. MORVILLO:  Yes, your Honor.

7         THE COURT:  Mr. Howe, you understood this form and

8    went over it with Mr. Morvillo before you signed it; is that

9    right?

10        THE DEFENDANT:  Yes, your Honor.

11        THE COURT:  There's also a document which is called a

12   waiver of indictment.  It's also signed and dated today's date,

13   September 20.  It's signed by Mr. Howe and by Mr. Morvillo.

14        In this document, Mr. Howe waives his right to be

15   prosecuted by an indictment, and he consents to a proceeding

16   which this is, which is based on what we call an information.

17        Mr. Morvillo, you went over that waiver of indictment

18   with Mr. Howe?

19        MR. MORVILLO:  We did indeed, your Honor.

20        THE COURT:  Mr. Howe, do you understand that you have

21   the right to have a proceeding based on an indictment but you

22   waive that right by signing this form?

23        THE DEFENDANT:  Yes, your Honor.  I read the

24   information, and I read it carefully.  I understand all of it.

25        THE COURT:  Fine.  So I alluded to a few minutes

 1    ago -- and I will mention it again now -- there is an agreement

 2    dated on page 1 September 19, 2016.  But I notice that the

 3    original in fact has been signed on the signature page, which

 4    is page 6, today and dated today, and that is the plea

 5    agreement in the form of a cooperation agreement in this

 6    matter.

 7              Mr. Morvillo, this is an agreement between you and the

 8    government, between the defense and the government.  I will

 9    reference some aspects of it, but the entire agreement of

10    course binds you, Mr. Howe, and the government.

11              Did you go over that plea agreement carefully with

12    Mr. Howe before you each signed it?

13              MR. MORVILLO:  Yes, your Honor.  Beginning yesterday,

14    and we did it again today.

15              THE COURT:  Mr. Howe, are you comfortable that you

16    understand and went over in enough detail this plea agreement

17    before you signed it today?

18              THE DEFENDANT:  Yes, your Honor.

19              THE COURT:  It's obvious, Mr. Morvillo, from this

20    agreement and the purpose for which we're here today that

21    Mr. Howe has indicated he wishes to enter a guilty plea with

22    respect to the eight counts in the information.

23              Is that a fair understanding of today's proceeding?

24              MR. MORVILLO:  That is correct, your Honor.

25              THE COURT:  Mr. Howe, before I accept or can accept

1    your guilty plea, I need to ask you a series of questions, and

2    the purpose of these questions is to establish to my

3    satisfaction that you in fact wish to plead guilty and that you

4    do so voluntarily and knowingly and because you are guilty and

5    also to establish that you know just what rights you're going

6    to be giving up by pleading guilty.

7           So, if you don't understand any of my questions or if

8    at any time during this proceeding you want to talk to

9    Mr. Morvillo, just say so, and I will give you as much time as

10   you need to consult with counsel because it's crucial to a

11   valid plea that you understand every question before you

12   answer.

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  I should also mention -- and I will

15   in fact right here -- that I have a copy of what's called the

16   pretrial services report.  It looks like that report was

17   prepared today or very recently based on, in part, in any

18   event, more than in part, phone conversations with yourself --

19   is that right? -- and your wife as well?

20          THE DEFENDANT:  A phone conversation, your Honor,

21   yesterday with myself and today via a phone conversation with

22   my wife.

23          THE COURT:  If you could, I'm going to start my

24   questions for you, Mr. Howe.  Could you please tell us your

25   full name.

1          THE DEFENDANT:  It's Todd Ransom Howe.

2          THE COURT:  Spell your middle name.

3          THE DEFENDANT:  R-a-n-s-o-m.

4          THE COURT:  Howe is spelled with an E on the end; is

5     that right?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  How old are you?

8          THE DEFENDANT:  Fifty-six.

9          THE COURT:  And you're a US citizen?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  How far did you go in school?

12          THE DEFENDANT:  I received a Bachelor of Arts in 1982.

13          THE COURT:  That was from what college or university?

14          THE DEFENDANT:  Hartwick College in Oneonta, New York.

15          THE COURT:  Are you now or have you recently been

16     under the care of a medical doctor?

17          THE DEFENDANT:  No, I have not.

18          THE COURT:  How about a mental health physician or

19     mental health worker?

20          THE DEFENDANT:  I'm talking to a psychologist with

21     regard to financial issues.

22          THE COURT:  How is your physical health?

23          THE DEFENDANT:  Fine, your Honor.

24          THE COURT:  How is your mental health?

25          THE DEFENDANT:  It's fine.

1          THE COURT:  Have you ever been addicted to drugs or to

2   alcohol?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Have you ever been hospitalized or treated

5   for any addiction?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  Have you taken any drugs or medicine or

8   pills or drunk any alcoholic beverages in the past 24 hours?

9          THE DEFENDANT:  No, your Honor.

10         THE COURT:  Is there anything that might cloud your

11  answers to my questions or your frame of mind here today?

12         THE DEFENDANT:  No, your Honor.

13         THE COURT:  Again, I'm going to ask -- I asked this a

14  minute ago -- first of all, how you feel today physically.

15         THE DEFENDANT:  Fine, your Honor.

16         THE COURT:  And mentally?

17         THE DEFENDANT:  Fine.

18         THE COURT:  And you understand fully what's happening

19  in this proceeding and the purpose of this proceeding here in

20  court today?

21         THE DEFENDANT:  Yes, your Honor.  I consulted with my

22  counsel about the charges and about my decision to plead

23  guilty, and I'm comfortable.

24         THE COURT:  Here is a question for the lawyers.

25         Do either of you have any doubts or concerns about

1   Mr. Howe's competence to plead at this time?

2            MR. MORVILLO:  No, your Honor.

3            MR. PIERSON:  No, your Honor.

4            MR. BOONE:  No, your Honor.

5            THE COURT:  Either do I.  Based on the record

6   established here today, including Mr. Howe's own testimony, I

7   find that he is competent to plead.

8            Mr. Howe, have you had a full opportunity -- I know

9   you've answered this in part already, but it's worth going over

10  again.

11           Have you had a full opportunity to discuss all aspects

12  of this case with Mr. Morvillo?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  Actually, you have two counsels.  Are you

15  of the same firm?

16           MR. MORVILLO:  This is my colleague, Stuart Pierson,

17  also from Morvillo LLP.

18           THE COURT:  Also based in DC?

19           MR. PIERSON:  Yes, your Honor.

20           THE COURT:  Have you gone over all aspects of the case

21  with counsel, Mr. Howe?

22           THE DEFENDANT:  Yes, I have, your Honor.

23           THE COURT:  Including any possible defenses that you

24  might have to the charges set forth in the information?

25           THE DEFENDANT:  Yes, your Honor.

THE COURT

1        THE COURT:  And are you fully satisfied with your

2   counsel's representation of you?

3        THE DEFENDANT:  Absolutely, your Honor.

4        THE COURT:  Are you fully satisfied with the legal

5   advice they have given you?

6        THE DEFENDANT:  Yes, your Honor.

7        THE COURT:  So now I'm going to ask some questions

8   exploring some rights that you have and pose some questions

9   about those.

10       First, as I mentioned and we've been over, we have

11  here an information.  There's been a waiver of indictment

12  because it's obvious from the information itself.  It's a

13  sealed information, as we earlier discussed.

14       Mr. Morvillo, although we've been over it before,

15  we'll go over it one more time.

16       You and Mr. Howe are waiving indictment in this case?

17       MR. MORVILLO:  Correct, your Honor.

18       THE COURT:  Mr. Howe?

19       THE DEFENDANT:  Correct, your Honor.

20       THE COURT:  Since you've offered to plead guilty to

21  these eight counts in the information, Mr. Howe, you understand

22  that you have the right to have the evidence underlying these

23  charges or counts presented to a grand jury and to have those

24  grand jurors decide whether there was probable cause that you

25  should be charged and that by signing this waiver of

1   indictment, you gave up that right and permitted the government

2   to file this information based only on the signature of the

3   United States Attorney.

4          Do you understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Do you understand that you have the

7   absolute right to plead not guilty here today?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Under the constitution and laws of the

10  United States, if you plead not guilty or if you pled

11  not guilty, you would be entitled to a speedy and public trial

12  by a jury on the charges set forth in the information.

13         Do you realize that?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  If you decided to have a trial, you would

16  be presumed to be innocent at the beginning of the trial, the

17  government would be required to prove that you were guilty by

18  competent evidence and beyond a reasonable doubt before you

19  could be found guilty, a jury would have to agree unanimously

20  that you were guilty, and you would not at a trial have to

21  prove that you were innocent.

22         Do you realize that?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Also at a trial, if you decided to have

25  one, and at every stage of your case, you would be entitled to

1    be represented by an attorney as you are today and have been in

2    these proceedings.  If you could not afford an attorney, one

3    would be appointed at public expense to represent you.

4              Do you realize that?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Also during a trial, if you opted to have

7    a trial instead of pleading here today, the witnesses for the

8    government would have to come to court and testify in your

9    presence, your attorney could cross-examine those witnesses for

10   the government, the government witnesses.  He could object to

11   evidence offered by the government, and he could offer evidence

12   and subpoena witnesses on your behalf.

13             Do you realize that?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Also at a trial, if you decided to have

16   one, although you would have the right to testify if you chose

17   to do so, you would also have the right not to testify, and

18   no one, including, particularly the jury, could draw any

19   inference or suggestion of guilt from the fact that you did not

20   testify if that's what you chose to do.

21             Do you realize that?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Even now this afternoon as you're entering

24   this guilty plea, you still have the right to change your mind

25   and to plead not guilty and to go to trial on the charges set

1   forth in the information.

2             Do you realize that?

3             THE DEFENDANT:  Yes, your Honor.

4             THE COURT:  If you do plead guilty and if I accept

5   your guilty plea, then you'll be giving up your right to a

6   trial and the other rights that I've been discussing with you,

7   and there will be no trial.

8             I will, nevertheless, enter a judgment of guilty

9   against you, and I will thereafter, not today, sentence you on

10  the basis of your guilty plea after having considered a

11  presentence investigation report, which is prepared by the

12  probation department, and whatever submissions I might get from

13  your counsel and from the government.

14            Do you realize that?

15            THE DEFENDANT:  Yes, sir.

16            THE COURT:  Again, I'll ask if you have received a

17  copy of the information and reviewed it and the charges

18  contained in the information with your counsel.

19            THE DEFENDANT:  Yes, your Honor.  I did.

20            THE COURT:  Have you discussed fully those charges in

21  the information to which you intend to plead guilty today?

22            THE DEFENDANT:  Yes, I have, your Honor.

23            THE COURT:  Again, some of these questions are

24  repetitive, but it's worth taking the time.

25            Are you fully satisfied with Mr. Morvillo and

1    Mr. Pierson's legal representation of you and their legal

2    advice to you?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  So let's now turn to the information and

5    to the eight counts.

6              Counsel for the government has indicated that Counts

7    One, Two, and Three relate to a single conspiracy or the same

8    conspiracy.

9              Is that a fair statement?

10             MR. MORVILLO:  Yes, your Honor.  I think Mr. Howe, for

11   purposes of allocution, would group them the same way that

12   Mr. Boone did.

13             THE COURT:  I'll go through them first, and then I'm

14   going to ask him to explain what it is that he did that makes

15   him believe that he's guilty of each of those eight counts.

16             Count One is an honest services conspiracy which

17   says -- this is just a rough summary.  I should make very clear

18   that the information contains all of these counts in their

19   entirety.  That information is incorporated here by reference,

20   and it speaks for itself.  My summary is not intended to be

21   exhaustive.  So it's just to get us through the proceeding, so

22   to speak.

23             So Count One says, in sum and substance, that from in

24   or about 2010 to 2016 in the Southern District of New York and

25   elsewhere, Mr. Howe unlawfully conspired, together with others,

1    to violate 18 U.S. Code, Sections 1343 and 1346.

2            An object of the conspiracy was to deprive the public

3    of its right to have the honest services of a high-level

4    official in the office of the governor of the state of New York

5    act in their best interests, so to speak.

6            In this conspiracy, it is charged that Mr. Howe agreed

7    with a high-level official in the governor's office in the

8    state of New York and others to use the power and influence of

9    that high-level official's position to obtain for him thousands

10   of dollars in bribes in exchange for taking favorable official

11   action for certain companies that Mr. Howe represented as a

12   consultant.

13           Count Two in summary says that from in or about 2010

14   up to and including in or about 2016, again in the Southern

15   District of New York, Mr. Howe conspired with others to violate

16   18 U.S. Code, Section 1951.

17           It is charged that in this conspiracy Mr. Howe and

18   others would and did arrange for entities with business before

19   New York state to direct payments to a high official in the

20   office of the governor of the state of New York in exchange for

21   that high official's taking of official action on their behalf.

22   You can see, of course, how this, as the government has pointed

23   out, Count Two relates to Count One.

24           Count Three, which also relates to this same

25   conspiracy, is an extortion conspiracy under color of official

1    right.  It says that during that same time period, Mr. Howe

2    knowingly conspired with others to violate 18 U.S. Code,

3    Section 1951 insofar as he aided and abetted a high official,

4    the same high official we've been talking about in the earlier

5    counts, in the New York State Governor's Office by helping the

6    high official obtain payments from entities with business

7    before New York state in exchange for the high official's

8    taking of official action on their behalf.  So those are the

9    first three counts.

10           Did the government want to add anything to the summary

11   of those three counts?

12           MR. BOONE:  Your Honor, I believe in regards to Count

13   Three, which is the substantive charge of extortion under color

14   of official right, I believe you may have said "conspiring."  I

15   just want to make sure that it's not a conspiracy charge.

16           THE COURT:  Right.  This is the substantive count.

17   Right.  You're quite right.

18           Any other corrections?  Are you comfortable then with

19   those summaries of Counts One, Two, and Three with that

20   addition?

21           MR. MORVILLO:  We are, your Honor.

22           THE COURT:  And the government as well?

23           MR. BOONE:  Yes, your Honor.

24           THE COURT:  So, moving to Count Four, this is in

25   regard to the second conspiracy that the government summarized

1    at the very outset of our conversation, and it pertains to

2    charges contained in Counts Four, Five, and Six.  Counts Four

3    and Six are conspiracy counts, and Count Five is a wire fraud

4    allegation.

5            So Count Four says that in or about 2013 up to and

6    including 2015 in the Southern District of New York and

7    elsewhere, Mr. Howe conspired with others.

8            And, in summary, in that conspiracy, Mr. Howe and

9    others devised a scheme to defraud an entity charged with

10   awarding significant taxpayer-funded development contracts by

11   secretly tailoring the entity's request for proposals for those

12   projects so that the requests for proposal would include

13   qualifications held by companies that had retained and paid

14   Mr. Howe as a consultant and thus virtually ensure that

15   Mr. Howe's clients would be and were awarded those contracts.

16           Counts Five is a wire fraud count.  It says that

17   Mr. Howe intentionally committed acts which constitute wire

18   fraud with respect to Count Five in or about 2013 up to and

19   including 2015 in the Southern District of New York; that

20   Mr. Howe devised a scheme to defraud an entity charged with

21   awarding significant taxpayer-funded development contracts by

22   secretly tailoring the entity's request for proposals for those

23   projects so that the requests for proposals, as I mentioned a

24   minute ago, would require qualifications that were held by

25   Mr. Howe's clients' companies that had retained him and paid

1    him as a consultant and thus ensured that those clients would

2    be awarded the contracts.

3              As to Count Seven --

4              MR. BOONE:  Six, your Honor.

5              THE COURT:  I'm going to come back to Count Six.

6              As to Count Seven, it charges that in or about 2009

7    through 2016 -- this is in the Northern District of New York.

8    Is that correct?  This activity took place in Count Seven?  Or

9    is that also the Southern District of New York?

10             MR. BOONE:  That's correct, your Honor.

11             THE COURT:  Which is?

12             MR. BOONE:  The Northern District.

13             THE COURT:  And also the District of Columbia and

14   elsewhere?  Is that right?

15             MR. BOONE:  Yes.

16             THE COURT:  Mr. Howe engaged in a scheme to defraud

17   his former employer, a government relations firm.  Two ways are

18   described.  One is by depositing checks intended for the

19   government relations firm without the firm's authorization in

20   an account that he only controlled.

21             And the other is falsely claiming to have incurred

22   travel expenses in relation to work associated with certain

23   clients of the government relations firm and then seeking

24   reimbursement from those clients for fraudulent expenses.

25             Count Six, returning to Count Six, is a conspiracy to

1      commit bribery.  It says that from in or about 2013 up to and

2      including in or about 2015 in the Southern District of New York

3      and elsewhere, Mr. Howe conspired with others to violate 18

4      U.S. Code, Section 666(a)(1)(B).

5              Count Six refers to the solicitation of bribes in

6      excess of $10,000 so that the arm of the New York state

7      government agency would grant contracts, subsidy loan

8      guarantee, etc., forms of federal assistance, to clients of

9      Mr. Howe.

10             Is that a fair statement of Count Six?

11             MR. BOONE:  Yes, your Honor.

12             MR. MORVILLO:  Yes, your Honor.

13             THE COURT:  Do you want to expand on that at all at

14     this time?

15             MR. MORVILLO:  Only that I think the substantive

16     charge is that monies were paid to Mr. Howe and that that would

17     constitute the bribery I believe in that count.

18             THE COURT:  Then Count Eight is all that remains.  We

19     went out of turn and did Five, Seven, and Six.  And now Count

20     Eight is remaining.

21             Count Eight is a tax evasion count which charges that

22     from January 1, 2010, through 2015, Mr. Howe, through the

23     filing of returns in the Eastern District of Virginia, in the

24     Northern District of New York, and elsewhere willfully

25     attempted to evade and defeat the payment of tax on a

1   substantial part of his income during that period by filing

2   false tax returns.  That's the summary, as I see it.

3         Does anybody want to add anything to the summary?

4   Remembering that the full count is set forth in the information

5   and speaks for itself.  If you want to correct any of those

6   summaries, feel free to do it.

7         MR. BOONE:  No, your Honor.  Just to point out what is

8   obvious, that there is a forfeiture allegation.

9         THE COURT:  Right.

10         MR. MORVILLO:  No, your Honor.  I believe that's a

11   fair summary.

12         THE COURT:  I'm going to turn to the government again

13   for a moment and ask the government.

14         So the plea agreement describes the total maximum

15   punishment or penalty in terms of incarceration that can be

16   imposed for these eight crimes as 130 years of imprisonment.

17         Did you want to break that down any and talk about

18   each count or counts separately in terms of penalty.

19         MR. BOONE:  I can, your Honor.  Starting with Count

20   One, which charges the defendant with participating in a

21   conspiracy to commit honest services fraud in violation of

22   Title 18, U.S. Code, Section 1349, carries a maximum sentence

23   of 20 years' imprisonment, a maximum term of three years'

24   supervised release, a maximum fine of $250,000, and a special

25   assessment of $100.

XG9KYHOW                    SEALED - DO NOT DOCKET                    28

1    THE COURT:  Mr. Howe, do you understand those maximums

2    for, first, the overall of 130 but now the maximums for Count

3    One?

4    THE DEFENDANT:  Yes, your Honor.

5    MR. BOONE:  In terms of Count Two, your Honor, it

6    charges the defendant with conspiracy to commit extortion under

7    the color of official right in violation of Title 18, U.S.

8    Code, Section 1951.

9    Count Two carries a maximum sentence of 20 years'

10   imprisonment, a maximum term of three years' supervised

11   release, a fine of $250,000, and a special assessment of $100.

12   THE COURT:  Mr. Howe, do you understand those maximums

13   to be applicable to Count Two?

14   THE DEFENDANT:  Yes, your Honor.

15   MR. BOONE:  In regards to Count Three, it charges the

16   defendant with the substantive act of extortion under the color

17   of official right in violation of Title 18, U.S. Code, Sections

18   1951 and (2).

19   Count Three carries a maximum sentence of 20 years'

20   imprisonment, a maximum term of three years' supervised

21   release, a maximum fine of $250,000, and a special assessment

22   fee of $100.

23   THE COURT:  And you understand, again, Mr. Howe, those

24   maximums to be applicable to Count Three?

25   THE DEFENDANT:  Yes, your Honor.

1          MR. BOONE:  Count Four charges the defendant with

2     conspiracy to commit wire fraud in violation of Title 18, U.S.

3     Code, Section 1349.  Count Four carries a maximum sentence of

4     20 years' imprisonment, a maximum term of three years'

5     supervised release, a maximum fine of $250,000, and a special

6     assessment fee of $100.

7          THE COURT:  Mr. Howe, do you understand those to be

8     the maximum possible penalties for Count Four?

9          THE DEFENDANT:  Yes, your Honor.

10         MR. BOONE:  Count Five, your Honor, charges the

11    defendant with wire fraud and the substantive act of wire fraud

12    in violation of Title 18, U.S. Code, Sections 1343 and (2).

13         Count Five carries a maximum sentence of 20 years'

14    imprisonment, a maximum term of three years' supervised

15    release, a maximum fine of $250,000, and a special assessment

16    fee of $100.

17         THE COURT:  Mr. Howe, do you understand those to be

18    the maximum penalties for Count Five?

19         THE DEFENDANT:  Yes, your Honor.

20         MR. BOONE:  Count Six charges the defendant with

21    conspiracy to commit bribery in violation of Title 18, U.S.

22    Code, Section 371.  Count Six carries a maximum sentence of

23    five years' imprisonment, a maximum term of three years'

24    supervised release, a maximum fine of $250,000, and a special

25    assessment fee of $100.

1         THE COURT:  And do you understand those to be the

2    maximum penalties for Count Six?

3         THE DEFENDANT:  Yes, your Honor.

4         MR. BOONE:  Count Seven charges the defendant with the

5    substantive act of wire fraud in violation of Title 18, U.S.

6    Code, Section 1343.  As mentioned earlier, in regards to wire

7    fraud, it carries a maximum sentence of 20 years' imprisonment,

8    a maximum term of three years' supervised release, a maximum

9    fine of $250,000, and a special assessment fee of $100.

10        THE COURT:  Mr. Howe, do you understand those to be

11   the maximum penalties for a violation of Count Seven?

12        THE DEFENDANT:  Yes, your Honor.

13        MR. BOONE:  Count eight charges the defendant with

14   attempting to evade and defeat a substantial part of the income

15   taxes due and owing by him to the United States of America for

16   the calendar years 2010 through 2015 in violation of Title 26,

17   U.S. Code, Section 7201.

18        Count Eight carries a maximum sentence of five years'

19   imprisonment, a maximum term of three years' supervised

20   release, a maximum fine of $100,000, and a $100 special

21   assessment.

22        THE COURT:  Mr. Howe, do you understand those to be

23   the maximum penalties of a violation of Count Eight?

24        THE DEFENDANT:  Yes, your Honor.

25        MR. BOONE:  Just so the record is clear, your Honor,

1    when I mentioned that the maximum fine for certain charges was

2    $250,000, as laid out in the cooperation agreement, it's the

3    greatest of $250,000, twice the gross pecuniary gain derived

4    from the offense, or twice the gross loss to a person other

5    than the defendant as a result of the offense.

6            THE COURT:  Correct.  While we're at or near the

7    provision, page 10 in the sealed information, as counsel

8    pointed out before, counsel for the government that is, there

9    is this forfeiture allegation.

10           Paragraph 14 says that Todd Howe shall forfeit to the

11   United States pursuant to Title 18, U.S. Code, Sections

12   981(a)(1)(C) and Title 28, U.S. Code, Section 2461 any and all

13   property, real and personal, that constitutes or is derived

14   from proceeds traceable to these offenses, including but not

15   limited to a sum of United States currency representing the

16   amount of the proceeds traceable to the commission of these

17   offenses or crimes.

18           Is that your understanding, Mr. Morvillo?

19           MR. MORVILLO:  Yes, it is, your Honor.

20           THE COURT:  And, Mr. Howe, do you understand that

21   forfeiture provision of the information as well?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  Counsel for the government, could you just

24   review quickly any restitution obligation set forth in the plea

25   agreement.

1          MR. BOONE:  Yes, your Honor.

2          THE COURT:  I think it's on page 2.

3          MR. BOONE:  Yes, your Honor.  Starting at the bottom

4     of page 2 of the cooperation agreement, it states, "It is

5     further understood that Howe shall make restitution in an

6     amount to be specified by the Court in accordance with 18 U.S.

7     Code, Sections 3663, 3663(a), and 3664.  This amount shall be

8     paid in accordance with a plan established by the Court."

9          THE COURT:  Mr. Howe, do you understand that you have

10    this restitution as well under the plea agreement?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Mr. Howe, do you think you fully

13    understand the maximum penalties to which you would be exposed

14    by entering this plea here today?

15         THE DEFENDANT:  Yes, your Honor, I do.

16         THE COURT:  Do you understand that a felony

17    adjudication, which this plea would represent several felony

18    adjudications, may result in your being deprived of certain

19    rights that you have, including the right to vote, the right to

20    hold public office, and the right to serve on a jury, as well

21    as the right to possess a firearm?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Do you understand that there is no parole

24    as commonly understood in the federal system, which is where we

25    are?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you understand, as counsel for the

3    government alluded to a minute or so ago, that in addition to

4    incarceration, you could be subject to a period of supervised

5    release with respect to each of the counts?

6          And with respect to supervised release, you need to be

7    aware that there would be terms and conditions attached and

8    that if you failed to comply with those terms and conditions,

9    you could, following a hearing, be returned to prison.

10         Do you realize that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Do you understand that any hearing in

13   connection with whether or not you were in compliance with the

14   terms and conditions of supervised release would be a nonjury

15   proceeding just before me?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Are you currently serving any other

18   sentences, state or federal?

19         THE DEFENDANT:  No, your Honor.

20         THE COURT:  Are you being prosecuted in any other

21   courts for any other crimes?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  I know that Mr. Morvillo will do this in

24   greater detail as we get closer to the sentencing and probably

25   has already begun talking about sentencing.

1        In connection with sentencing, I like to point out

2   during plea allocutions, first that the so-called "mandatory

3   sentencing guidelines" as a result of Supreme Court and Second

4   Circuit decisions over the last eight years or so, they are no

5   longer mandatory.

6        When we get to sentencing, in order to come up with a

7   fair and a reasonable sentence, I will address the factors

8   found in a statute referred to as 18 U.S. Code, Section

9   3553(a).  And those factors include the nature and the

10  circumstances of the offense or offenses; the history and

11  characteristics of yourself, usually as set forth in the

12  presentence investigation report; and any submissions I might

13  get from your attorneys and from the government and of course

14  also the plea agreement.

15       We try to accomplish these objectives at sentencing:

16  to reflect the seriousness of the crimes, to promote respect

17  for the law, to provide a just punishment, to afford adequate

18  deterrence to criminal conduct, to protect the public from

19  further crimes, to provide defendants with needed educational

20  or vocational training or medical care or other correctional

21  treatment in the most effective manner.

22       In doing all that, I will look at the kinds of

23  sentences that are available, the kinds of sentences and the

24  sentencing range established in the sentencing guidelines, even

25  though, as I said before, those are no longer mandatory.

1        I'll look at any policy statements issued by the

2   United States Sentencing Commission that may apply to your case

3   and seek to avoid unwarranted sentence disparities among

4   similarly situated defendants and finally to provide, as we've

5   discussed briefly already, for restitution.

6        Mr. Morvillo, I don't know if you've had that

7   conversation or started that conversation with Mr. Howe.

8        MR. MORVILLO:  We have, your Honor.

9        THE COURT:  Do you have some understanding now,

10  Mr. Howe, as to how we'd go about trying to fashion a fair and

11  reasonable sentence in your case?

12        THE DEFENDANT:  Yes, your Honor.

13        THE COURT:  Do you realize that even if you don't like

14  the sentence that I impose, you would not for that reason alone

15  be able to withdraw today's guilty plea?

16        THE DEFENDANT:  Yes, your Honor.

17        THE COURT:  Do you realize -- counsel, this is a

18  question for you too -- there is a provision in the plea

19  agreement, which is fairly routine, but says that the

20  defendant, Mr. Howe in this case, understands that the sentence

21  to be imposed upon him is imposed in the discretion of the

22  Court.

23        Do you agree with that principle, counsel?

24        MR. MORVILLO:  We do, your Honor.

25        THE COURT:  Counsel for the government?

1              MR. BOONE:  Yes, your Honor.

2              THE COURT:  Mr. Howe, do you understand that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Bottom line, so to speak, Mr. Howe, do you

5     think you fully understand the consequences of pleading guilty

6     here today?

7              THE DEFENDANT:  Yes, I do, your Honor.

8              THE COURT:  Has anyone threatened you or in any way

9     forced you to plead guilty?

10             THE DEFENDANT:  No, your Honor.

11             THE COURT:  Including any attorneys.

12             THE DEFENDANT:  No, your Honor.

13             THE COURT:  I'll go over just briefly again or refer

14    briefly again to the plea agreement, which is a cooperation

15    agreement, dated September 19 and signed today on September 20.

16             You carefully reviewed and went over that agreement

17    with your counsel?

18             THE DEFENDANT:  Yes, I did, your Honor.

19             THE COURT:  As in the case of the information, it

20    speaks for itself in its entirety.  I'll highlight one or two

21    provisions at this point.

22             I think I mentioned this at the beginning.  First of

23    all, it provides that two weeks prior to any sentence that you

24    would file amended tax returns for calendar years 2010 through

25    2015 and you would also pay any past taxes that are due and

1   owing for that period.

2          Do you recall that?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  It also provides that you will have a

5   restitution obligation and a forfeiture obligation as we've

6   discussed.

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  It provides also that -- this is certainly

9   a key aspect of the agreement.  It says, in sum and substance,

10  that if you fully comply with the terms of the plea agreement,

11  in particular, with your obligations to cooperate with the

12  government in connection with any investigations that it has

13  undertaken or will undertake, then the government agrees that

14  it will file on your behalf what is called a 5K1.1 motion

15  bringing to the Court's attention the extent and nature of the

16  cooperation that you've provided.

17         Do you realize that?

18         THE DEFENDANT:  Yes, your Honor.  I do.

19         THE COURT:  Has anybody at all made any promise or

20  inducement to cause you to plead guilty today?

21         THE DEFENDANT:  No, your Honor.

22         THE COURT:  Has anybody made any promise to you as to

23  what your sentence in this case will be?

24         THE DEFENDANT:  No, your Honor.

25         THE COURT:  Including any attorneys.

1                THE DEFENDANT:  No, your Honor.

2                THE COURT:  Now, turning back to the government, we've

3       been over these counts pretty thoroughly.  I would ask the

4       government what, in summary, it believes it would be able to

5       prove in court if this case were to go to trial instead of

6       being resolved by this plea allocution here today.

7                MR. BOONE:  Certainly, your Honor.  I'll discuss sort

8       of the conspiracies as we have so far.  The first one that we

9       mentioned earlier involved Mr. Howe acting as a conduit for

10      making payments to CC1 as referenced in the information.

11               The government would use emails, documents, including

12      bank documents and government documents, as well as witness

13      statements to prove its case.  We believe that those documents

14      would show that payments in fact were made to CC1 and also show

15      that Mr. Howe acted as a conduit in ensuring that those

16      payments got there.

17               We also believe that documents, including emails,

18      would show that there was an agreement.  There was a conspiracy

19      that existed, the purpose of which was for Mr. Howe to help CC1

20      receive payments in exchange for him performing official

21      actions on behalf of Mr. Howe's clients who were the source of

22      those payments.

23               In regards to what we have been discussing as sort of

24      the second conspiracy --

25               THE COURT:  Before you get to that, that first one

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    covers the time period 2010 to 2016, did it?

2              MR. BOONE:  That's correct, your Honor.

3              THE COURT:  And it occurred in or about the Southern

4    District of New York?

5              MR. BOONE:  Yes, your Honor.  We would have evidence

6    showing that certain meetings involving the conspiracy occurred

7    in Manhattan in particular.

8              THE COURT:  Thank you.  You were going to turn to the

9    second conspiracy.

10             MR. BOONE:  Yes, your Honor.  In the second

11   conspiracy, we would again use documents that would include

12   emails, bank documents, government documents, as well as

13   witness statements to show that Mr. Howe was acting as a

14   representative, as the agent of the state, and that in that

15   capacity, he was helping tailor what we've termed as "requests

16   proposals" by an entity that was charged with doling out

17   certain development projects and that he was doing that on

18   behalf of his own clients and that those clients were paying

19   him money in return for his help in that regard.

20             THE COURT:  This conspiracy was in a little bit

21   different time period here.  Was it 2013 to 2015?

22             MR. BOONE:  Yes.  That's correct, your Honor.  In

23   regards to venue, we would have evidence that would include

24   witness statements and documents showing that the entity

25   charged with overseeing and doling out these government

1    contracts had interactions with a state agency in New York City

2    that was charged with essentially helping pay for those

3    projects.

4           THE COURT:  Before I referred to SUNY as being

5    involved in this.  That wasn't really specific enough.

6           Could you clarify the agency that we were talking

7    about by name.

8           MR. BOONE:  Yes, your Honor.  It's an entity

9    affiliated with the Colleges of Nanoscale, N-a-n-o-s-c-a-l-e,

10   Science and Engineering.

11          THE COURT:  Thank you.  I think we adequately

12   described Counts Seven and Eight earlier.  Is that fair to say?

13          MR. MORVILLO:  Yes, your Honor.  We refer to the long

14   name that we call SUNY Nano so that when Mr. Howe speaks,

15   you'll understand that's the state agency.

16          THE COURT:  Okay.

17          Mr. Howe, having heard the government summarize what

18   it feels that it could prove if this case were to go to trial

19   instead of eventuating in a plea as we're progressing to do

20   today and in light of the questions I've asked you up until now

21   and the answers you've already given, is it your wish at this

22   time to plead guilty or not guilty to Counts One through Eight

23   in the information?

24          THE DEFENDANT:  Guilty, your Honor.

25          THE COURT:  And now, if you would, tell me, in your

1    words, what it is that you've done that makes you believe that

2    you are in fact guilty of those eight crimes as set forth in

3    Counts One through Eight of the information.

4          THE DEFENDANT:  Of course, your Honor.  With respect

5    to Count One, Count Two, and Count Three, during the period

6    from 2010 to 2016, I knowingly and intentionally conspired with

7    co-conspirator 1, a high-ranking official in the Office of the

8    Governor of the State of New York, and others to deprive the

9    public of the intangible right of honest services of the Office

10   of the Governor of New York State.

11         I also knowingly and, regretfully, intentionally aided

12   and abetted CC1 by helping him obtain payments from entities

13   with business before New York state in exchange for his taking

14   official action on their behalf and for using his influence

15   over other New York state officials on behalf of those

16   entities.

17         As part of that conspiracy and agreement with CC1, I

18   solicited and made arrangements to have certain of my clients

19   with business before the state pay bribes to co-conspirator 1

20   in exchange for his using his official position in the

21   governor's office to assist my clients.

22         Based on those arrangements, several of my clients

23   paid thousands of dollars in bribes to or for the benefit of

24   CC1 in return for using the power and influence of the official

25   position in the governor's office to take official action on

1   behalf of my clients to assist them in procuring contracts for

2   the state of New York.

3        During the period of 2010 to 2016, I helped make

4   arrangements for clients of mine to pay thousands of dollars of

5   bribes directly and indirectly to CC1 for his personal use and

6   enjoyment.

7        In return, he agreed to use and did use his official

8   position within the governor's office to help my clients

9   precure lucrative contracts with the state government or

10  contracting agents and to use his influence with other

11  officials in New York state on my clients' behalf.

12       In one situation, I received thousands of dollars of

13  funds from a client designed for CC1 and used those funds to

14  pay CC1 as we had agreed upon.  In another instance, I used

15  funds that I embezzled from my firm or received directly from

16  firm clients to make additional payments of thousands of

17  dollars to CC1.

18       I agreed to be a conduit for payments from my client

19  to CC1 and also upon additional payments myself to conceal from

20  my employer and the public the fact that my client in certain

21  circumstances made such bribe payments to a New York state

22  governmental official in exchange for his taking official

23  action and for using his influence with other state government

24  official on my client's behalf.

25       Also, in addition, I caused and assisted another

1    client to pay CC1 thousands of dollars for his help in using

2    his public position with the state, take favorable official

3    action on my client's behalf with regard to business or

4    potential business for New York state, and to ensure that the

5    client was favorably considered for a lucrative contract with

6    the state government.

7         In that case, I arranged for my client to hire,

8    through another company, CC1's spouse for the express purpose

9    of paying thousands of dollars to her and, therefore,

10   indirectly to him.

11        As part of the conspiracy, I met with CC1 and other

12   members of the conspiracy on several occasions between 2010 and

13   2016 here in New York City.  In engineering the foregoing acts,

14   I used the mails, email and other instruments of interstate

15   commerce, to make arrangements for the payments to CC1 and in

16   certain cases did make the payments to CC1 to his wife or on

17   his behalf.

18        If it's okay, your Honor, I'll move to Counts Four,

19   Five, and Six, if I could.

20        THE COURT:  Okay.  Mr. Morvillo, has Mr. Howe not

21   covered some of those counts already?

22        MR. MORVILLO:  Not in that, no.  This is a separate

23   conspiracy about tailoring the RFP's your Honor.

24        MR. BOONE:  If I could, your Honor, I just want to

25   make it clear in regards to the wire element.  He did mention

1    emails.  I just wanted to make that clear.

2         THE COURT:  So, government, you're okay with his

3    allocution so far?

4         MR. BOONE:  We're okay, your Honor.

5         THE COURT:  And you are, Mr. Morvillo?

6         MR. MORVILLO:  Yes.

7         THE COURT:  Go ahead.

8         THE DEFENDANT:  With respect to Count Four,

9    Count Five, and Count Six, from at least 2013 up to 2015, I

10   knowingly and intentionally conspired with others to defraud

11   SUNY Nano, a government agency charged with ordering

12   taxpayer-funded contracts through which I received over $10,000

13   in connection with a federal program.

14        I did so by secretly having SUNY Nano, a client of

15   mine, tailor its requests for proposals relating to

16   construction projects so that they required qualifications

17   possessed by my clients.

18        As part of this --

19        THE COURT:  Was SUNY Nano your client?

20        THE DEFENDANT:  Yes, it was, your Honor.  As part of

21   this conspiracy, I worked as a consultant for SUNY Nano at the

22   same time that I provided consulting services to two other

23   clients who bid for different contract awards.

24        I defrauded SUNY Nano by soliciting the consulting

25   work, demanding and accepting payment of thousands of dollars

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

as SUNY Nano's agent in exchange for my help in influencing the

requests for proposals issued by SUNY Nano, required

credentials possessed by my two clients in a manner that

virtually ensured that my clients would each be awarded

respective contracts.

Because of my position as a consultant to both SUNY

Nano and the bidders in the two projects, I had access to and

influence over the draft requests for the proposals prepared

for their respective contracts.

I sought, obtained, and conveyed to SUNY Nano

information concerning the qualifications my clients had and

used that information and the assistance of other members of

the conspiracy to have SUNY Nano secretly tailor its final

request for proposals for those projects that the requests for

proposals required qualifications that were, in a sense,

qualifications of my clients.

In one instance, I forwarded an RFP location and

purpose of the taxpayer-funded construction project to my

clients which gave them an informational advantage over any

other entities that might bid for the project.

I therefore helped the client provide particular

qualifications to SUNY Nano and then, with the assistance of

other conspirators, caused SUNY Nano to tailor its request for

proposals to include particular qualifications of my client.

I engaged in similar activities while serving as an

1    agent of SUNY Nano that resulted in another client of mine

2    being awarded a construction contract by SUNY Nano in the

3    central, north, and Syracuse area.

4            During the forementioned period, I utilized the mails,

5    emails, and other instruments of interstate commerce to send

6    and receive communication and monies in furtherance of this

7    conspiracy.

8            During the conspiracy, I attended several meetings

9    here in New York City that related to the clients that are

10   referenced above.

11           MR. MORVILLO:  Your Honor, I only make one correction.

12   I think he misspoke by saying he forwarded an RFP to a client.

13   I think it was a PowerPoint presentation related to that.

14           THE DEFENDANT:  Correct.

15           THE COURT:  Just for my edification, SUNY Nano was

16   located where?

17           THE DEFENDANT:  In Albany, your Honor.

18           THE COURT:  Okay.

19           THE DEFENDANT:  In relation to Count Seven --

20           THE COURT:  Before we get there, is the government

21   okay with Counts Four, Five, and Six?

22           MR. BOONE:  One moment, your Honor.

23           (Pause)

24           MR. BOONE:  Your Honor, if we could have the defendant

25   make clear, when he mentioned that he had defrauded SUNY Poly,

1   SUNY Nano as he referred to it, by secretly tailoring the

2   RFP's, that what is implied in saying "secretly" is that people

3   at SUNY Poly were not aware.

4              THE COURT:  Were not aware?

5              MR. BOONE:  Right.

6              THE COURT:  Is that correct?  That they were not aware

7   that you in fact were tailoring the RFP?  Or were they aware of

8   that?

9              MR. MORVILLO:  May I speak with him a minute?

10             THE COURT:  Sure.

11             MR. BOONE:  To be clear, some people were not aware.

12             MR. MORVILLO:  That was the clarification.

13             THE COURT:  Just for the record, the correct facts are

14  what?  Some people were aware and some were not?

15             MR. MORVILLO:  There were one or more coconspirators

16  employed by SUNY Nano.  As an institution, it was not aware of

17  it.

18             THE COURT:  Is that a correct statement?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Is it okay to move to Seven and Eight?

21             MR. BOONE:  Yes, your Honor.

22             THE COURT:  Go ahead, Mr. Howe.

23             THE DEFENDANT:  Count Seven, your Honor.  During the

24  period from 2009 through 2016, I knowingly and intentionally

25  used interstate communications to defraud my employer, a

1    government relations firm, of several hundred thousand dollars

2    by depositing checks intended for my employer into an account I

3    opened up in my employer's name without my employer's knowledge

4    or authorization and then transferring the funds to a personal

5    account for my use without the firm's authorization.

6              THE COURT:  And the account that you opened up you had

7    sole control over I take it?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  And that former employer was located in?

10             THE DEFENDANT:  In Albany.  Having several clients pay

11   fees and bonuses related to services I provided while employed

12   with the firm into an account I opened, owned, and controlled

13   without the authorization and knowledge of my employer.

14             I did not disclose this to the firm and in fact

15   concealed the arrangements I made and the payments I received

16   from clients for services I provided while an employee of the

17   firm.

18             THE COURT:  I'm sorry.  I didn't quite get that.  Slow

19   down if you could.  Just repeat that.

20             THE DEFENDANT:  I did not disclose to the firm and

21   in fact concealed the arrangements I made and the payments I

22   received from clients for services I provided while an employee

23   of the firm.

24             THE COURT:  Okay.

25             THE DEFENDANT:  I did not disclose to the firm and

1  in fact concealed the arrangements I made -- I guess I just

2  said that.  I apologize.

3          THE COURT:  That's all right.

4          THE DEFENDANT:  I also falsely claimed and submitted

5  to various clients of the firm employing my travel requests for

6  thousands of dollars had already been reimbursed for by the

7  firm or the clients for whom I actually incurred the travel

8  expenses.  In this fashion, I sometimes collected two types the

9  amount of the travel expenses and kept the overcharges for my

10  personal use.

11          Count Eight.

12          THE COURT:  The government is okay with Count Seven as

13  described?

14          MR. BOONE:  Yes, your Honor.

15          THE DEFENDANT:  Count Eight, your Honor.  In each of

16  the years 2010 through 2015, I knowingly and intentionally

17  defrauded the US by filing false tax returns.

18          In filing my tax returns, I intentionally failed to

19  include as income any of the funds I misappropriated from my

20  employer or were paid directly to my personal business account.

21  In the aggregate over that period, I failed to report in my

22  taxes over those particular years.

23          In addition, during 2010 to 2015, I knowingly and

24  intentionally claimed deductions for business-related expenses

25  in excess of what I actually incurred.

1          THE COURT:  Was it your intention to state a dollar

2    amount with respect to Count Eight?  I'm not saying you need to

3    if that wasn't part of your allocution.  I didn't quite

4    understand.

5          MR. MORVILLO:  I'm not sure that we and the government

6    know exactly what the government's contentions are with regard

7    to the dollars.

8          THE COURT:  Mr. Howe wasn't intending to state an

9    amount in his allocution?

10          MR. MORVILLO:  No, your Honor.  I think we can safely

11    say it was in excess of $1.5 million.

12          MR. BOONE:  Yes, your Honor.  The rest of the

13    allocution was fine.  We did want to go back briefly to his

14    allocution regarding Counts Four through Six.

15          THE COURT:  Okay.

16          MR. BOONE:  Just for belt and suspenders, in relation

17    to the part of the conspiracy charged that requires the

18    transaction to which the payment related was at least $5,000,

19    Mr. Howe described that he accepted bribes to help tailor RFP's

20    for construction projects.  I think if he could speak to the

21    value of those projects and whether or not they were over

22    $5,000.

23          THE COURT:  The value of the bribe or the value of the

24    projects?

25          MR. BOONE:  Both actually.

1        THE COURT:  If you can with regards to that.

2        THE DEFENDANT:  The value of the bribe was in excess

3   of $5,000, and the projects that we're referring to were

4   millions of dollars.

5        THE COURT:  Each project?

6        THE DEFENDANT:  Yes.

7        THE COURT:  Were they mostly construction projects?

8        THE DEFENDANT:  Yes, your Honor.

9        THE COURT:  Where did they take place?

10        THE DEFENDANT:  In the upstate area, western New York,

11   Buffalo, and in Syracuse, in the central New York area.

12        THE COURT:  Are you satisfied?

13        MR. BOONE:  Yes, your Honor.

14        THE COURT:  I didn't mean to cut you off.  Had you

15   finished?

16        THE DEFENDANT:  Yes, your Honor.

17        THE COURT:  So then my question to you is:  Are you

18   pleading guilty to these eight crimes because you are in fact

19   guilty of each of them?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  Does the government counsel agree that

22   there's a sufficient factual predicate for this guilty plea

23   with respect to each of the eight counts in the information?

24        MR. BOONE:  Yes, your Honor.

25        THE COURT:  Do you, Mr. Morvillo, as well?

XG9KYHOW                    SEALED - DO NOT DOCKET                    52

1          MR. MORVILLO:  Yes, your Honor.

2          THE COURT:  So am I.  It is the finding of the Court

3   in this matter, US v. Todd Howe, that Mr. Howe is fully

4   competent and capable of entering an informed plea; that he is

5   aware of the nature of the charges and the consequences of his

6   plea, and that the plea of guilty is a knowing and voluntary

7   plea supported by an independent basis in fact supporting each

8   of the essential elements of the eight offenses set forth in

9   the information.

10         So the plea is, therefore, accepted by the Court, and

11  the defendant, Mr. Howe, is now adjudged guilty of each of

12  those eight offenses set forth in the information.

13         In terms of next steps or a next date, do you have any

14  sense of when you want to come back before the Court for any

15  reason, even for a status?  A status would be helpful if you're

16  anticipating not going to sentencing near term.

17         MR. BOONE:  Can I confer with counsel?

18         THE COURT:  Absolutely.

19         (Pause)

20         MR. BOONE:  Your Honor, both sides are in agreement

21  and proposing for your consideration that we set a control date

22  approximately six months from today.

23         THE COURT:  So, just as a matter of practice, could I

24  impose upon you to come back in four months just to let us know

25  where things stand.

1          MR. MORVILLO:  Absolutely.

2          MR. BOONE:  Yes, your Honor.

3          THE COURT:  How about January 23 for an interim status

4    report?  Is it feasible for you to do an early morning,

5    Mr. Morvillo?

6          MR. MORVILLO:  Yes, your Honor.

7          THE COURT:  9:00 a.m.?  Can you do that?

8          MR. MORVILLO:  Absolutely, your Honor.

9          THE COURT:  Is that okay for the government as well?

10          MR. BOONE:  Yes, your Honor.

11          THE COURT:  Mr. Boone, you mentioned -- I just want to

12   make sure it is adequately covered -- venue issues.  Are we all

13   set with venue with respect to each of the eight counts?  If

14   there are any unusual features, are they agreed to by the

15   defense?

16          MR. BOONE:  Your Honor, in regards to Counts Seven and

17   Eight, which mention other districts, our understanding is that

18   the defendant will waive the venue as to those counts.

19          THE COURT:  Is that right?

20          MR. MORVILLO:  That is correct, your Honor.

21          THE COURT:  That satisfies the venue requirement?

22   Because I think in Counts One through Six we clearly discussed

23   where those offenses took place.

24          MR. BOONE:  I believe so, your Honor.

25          THE COURT:  One other issue before we really close.

XG9KYHOW                    SEALED - DO NOT DOCKET                        54

1   The bail conditions in this case are?  Can somebody just

2   summarize them for me.

3            MR. BOONE:  Your Honor, we have a recommendation or

4   suggestion for you based on our discussions, which is that the

5   defendant be released today on his own signature pursuant to a

6   $100,000 personal recognizance bond to be signed by his wife

7   within a week from today.

8            We ask that he surrender his passport and make no new

9   travel applications within 48 hours of today.  We ask that his

10  travel be restricted to the Southern District of New York, the

11  Eastern District of New York, the District of Columbia, and the

12  parts in between since he'll have to travel to New York on

13  occasion.  And we ask that he be placed on regular pretrial

14  supervision.  I believe that's all, your Honor.

15           MR. MORVILLO:  That's all fine, your Honor.

16  Mr. Howe's wife is sitting in my office.  We'll have the bond

17  back this afternoon.

18           With regard to travel, as I've indicated to Mr. Boone,

19  having lost his job, Mr. Howe is seeking employment, which may

20  necessitate his traveling outside of the mid-Atlantic states.

21  I think we agreed that we would advise the U.S. Attorney's

22  Office in advance before he undertakes any such travel and seek

23  their consent.

24           MR. BOONE:  Yes.  That's fine for us.

25           THE COURT:  We have pretrial here today as well.

1    First of all, we thank you for the report.  Second, it's

2    helpful that pretrial hear these terms and conditions.

3              Are they satisfactory to the government?

4              MR. BOONE:  Yes, your Honor.

5              THE COURT:  And to the defense?

6              MR. MORVILLO:  Yes, your Honor.

7              THE COURT:  So, starting with counsel for the

8    government, did you want to add anything to today's plea

9    allocution?

10             MR. BOONE:  Nothing to the allocution, your Honor.

11             THE COURT:  You're satisfied then with the allocution.

12   Did you want to add anything to this proceeding in any respect?

13             MR. BOONE:  Just so the record is clear -- I don't

14   believe we introduced ourselves.  I'm Robert Boone, assistant

15   United States attorney.  With me is my colleague, Janis

16   Echenberg.

17             THE COURT:  I should have said it at the beginning.

18   It's nice to have you here.

19             Mr. Morvillo, do you want to add anything to today's

20   proceeding?

21             MR. MORVILLO:  No, your Honor.  We thank you for your

22   time.

23             THE COURT:  You're very welcome.  You're also

24   satisfied with the plea allocution here today?

25             MR. MORVILLO:  Yes, your Honor.

1        (Pause)

2        MR. BOONE:  A couple of things, your Honor.  One, very

3   briefly, obviously, given the fact that we've tried hard to

4   keep this as secure as possible, we would like to try to have

5   Mr. Howe be able to remain in the courtroom to sign the bond as

6   opposed to going down to the fifth floor, which is a custom.

7        THE COURT:  Here is the problem with that.  We don't

8   create the bond.  We do have to have his disposition sheet

9   filled out which is a prerequisite for the bond.  I don't know

10  what arrangements you can make or have made about the bond

11  itself.  Those documents I think typically come from magistrate

12  court.

13       MR. BOONE:  Yes.  That's my understanding.  I've

14  talked to them about this.  They asked that I reraise it with

15  them today once the plea happens.  My understanding is --

16  you're right.  They will type it up down there.  They may be

17  willing to then come here and have him swear to whatever they

18  have him swear to and have him sign it physically here.

19       THE COURT:  Were you going to call them?

20       MR. BOONE:  Yes.

21       THE COURT:  So let's do this:  Let's fill this out.

22  That is to say you and defense counsel and the pretrial

23  services officer.  It will have the terms and conditions.  Once

24  it's filled out, I'll sign it, and you'll look at it.

25       Before I sign this -- this is called District Judge

1   Bail Disposition Sheet -- could you each take a look at it and

2   see if it meets your satisfaction.

3           Is that all right with you, Mr. Boone?

4           MR. BOONE:  Yes, your Honor.

5           THE COURT:  And Mr. Morvillo?

6           MR. MORVILLO:  Yes, your Honor.

7           THE COURT:  The record will reflect that I'm signing

8   this disposition sheet.

9           Now, did you want to call down to magistrate's court

10  from here?  How did you want to have that happen?

11          MR. BOONE:  I'm sorry.  I missed that, your Honor.

12          THE COURT:  I said did you want to call magistrate's

13  court from here?

14          MR. BOONE:  Your Honor, I can just walk down there

15  with the form.

16          THE COURT:  Are they going to come back here with the

17  bond?

18          MR. BOONE:  That's our request.  Our request is that

19  they come back here with the bond so that the defendant can

20  sign it.

21          THE COURT:  Do you need a copy of this disposition

22  sheet to do that?

23          MR. BOONE:  Yes.  I believe I need to give it to them.

24          THE COURT:  I think we'll briefly adjourn but remain

25  in place, if that's what you wish.  I'll come back as soon as

XG9KYHOW            SEALED – DO NOT DOCKET              58

1     you come back.

2            MR. BOONE:  Yes, your Honor.

3            THE COURT:  Just so you know, it's my intention I'll

4     come back and you come back just to wrap up the proceeding.  I

5     don't think I technically need to be here for issuance of the

6     bond but just to wrap up, as they say.

7            MR. BOONE:  Yes, your Honor.

8            THE COURT:  So you're welcome to remain in place.

9            MR. BOONE:  Just one last thing before I forget,

10    your Honor.

11           THE COURT:  Okay.

12           MR. BOONE:  We had requested in our papers submitted

13    to the Court yesterday, September 19, that docketing be

14    delayed.  I just wanted to reemphasize that.

15           THE COURT:  We're granting that application.  Again,

16    that's temporary.  We would not docket without speaking to you

17    first.  And, more likely, we will hear from you first and then

18    docket.

19           MR. BOONE:  Yes, your Honor.

20           THE COURT:  Thanks very much.  Good to see you all.  I

21    don't know how long it will take you down there.  Whatever time

22    you need.  Thanks a lot.

23           MR. MORVILLO:  Thank you, your Honor.

24           MR. BOONE:  Thank you, your Honor.

25           (Adjourned)